IN THE UTAH COURT OF APPEALS

----ooOoo----

| | | |
|---|---|---|
| Dana Henshaw, | ) | MEMORANDUM DECISION |
| | ) | |
| Petitioner and Appellee, | ) | Case No. 20100516-CA |
| | ) | |
| v. | ) | F I L E D |
| | ) | (February 24, 2012) |
| Dee A. Henshaw, | ) | |
| | ) | 2012 UT App 56 |
| Respondent and Appellant. | ) | |

-----

Sixth District, Loa Department, 064600004
The Honorable Lyle R. Anderson
The Honorable George M. Harmond[1]

Attorneys:     Dee A. Henshaw, Washington, Appellant Pro Se
David A. Van Dyke, Teasdale, for Appellee

-----

Before Judges Voros, Thorne, and Roth.

ROTH, Judge:

¶1     Dee A. Henshaw (Husband) challenges the trial court's entry of supplemental findings of fact and conclusions of law and a supplemental decree of divorce. Husband raises ten issues on appeal. These issues can be categorized as challenges to the trial court's findings of fact relating to the real property distribution, its subsequent division of that property, its order to sell the real property, its order for Husband to remove personal property from the real property within thirty days of the issuance of the supplemental divorce decree, and its ruling that Husband had violated rule 11 of the

---

[1]Judge Lyle R. Anderson resolved the sanctions issue, and Judge George M. Harmond ruled on the remaining issues.

Utah Rules of Civil Procedure. We reverse and remand the order of sale but affirm the trial court in all other respects.

## I. Background

### A. Relevant Facts

¶2 Husband and Dana Henshaw (Wife) married in August 1998. During the marriage, the parties resided in Wayne County, Utah, on the real property at issue in this appeal (the ranch). Husband acquired a majority of the ranch's acreage (the original ranch) from his mother prior to meeting Wife. In 2005, the parties purchased eight adjacent acres of property (the eight acres) with money that Husband had received from his mother. Throughout the marriage, Husband worked primarily on the ranch while Wife worked outside the home. Wife filed for divorce in May 2006. Judge Wallace A. Lee entered a bifurcated decree of divorce in April 2008 and set the unresolved question of how the real property would be divided for trial. In June 2007, however, prior to the entry of the bifurcated decree and resolution of the real property division, it appears that Husband sold the ranch, which was the parties' most significant asset.

### B. Procedural Background

¶3 In her 2006 divorce petition, Wife requested temporary relief, including alimony, child support, and a restraining order preventing Husband from selling any property. The trial court set an order to show cause hearing on these issues for June 14, 2006, but that hearing was continued, first at Wife's request and then by stipulation of the parties, until July 2007. In August 2007, the trial court entered an order that, among other things, prohibited either party from selling any real or personal property without prior approval from the court. Less than two months later, Husband's attorney, Marsha Lang, withdrew as counsel. Husband then hired Kenneth L. Combs, who represented Husband until he moved to withdraw in March 2008 because of Husband's failure to pay and a conflict of interest. Husband then hired attorney Stephen R. Cook.

¶4 In December 2008, Cook moved to withdraw on the basis that Husband had failed to pay his fees. Wife opposed the motion, arguing that Cook was Husband's third attorney and Husband's previous "wholesale continued violations of this Court's Orders" had resulted in "intolerabl[e] delay[]" of the divorce's resolution. On January

10, 2009, Cook filed a "re-entry of appearance of counsel."[2] Two weeks later, Judge Lee recused himself from the case, and Judge Marvin D. Bagley was assigned. Husband, through Cook, moved for Judge Bagley's recusal by mail on March 11, 2009; it was received by the trial court on March 13. On March 12, 2009, however, Judge Bagley had recused himself sua sponte. Eventually, the case was assigned to Judge Harmond, a seventh district judge who was asked to temporarily serve in the sixth district to resolve this matter.

¶5    In June 2009, Judge Harmond entered a final pretrial order and set the matter for a two-day trial beginning July 21, 2009. On June 24, Cook again moved to withdraw as counsel, this time because of ethical issues that he did not further explain. Wife opposed counsel's withdrawal, citing the lengthy delays and encouraging the court to permit the withdrawal only if Husband "certifies to this court his appearance pro se and his absolute promise to comply with the existing Pretrial Order and be prepared to attend the trial set for July." On July 1, Judge Harmond allowed Cook to withdraw but required Husband to appoint counsel within ten days and ordered Husband, or his new counsel, to be prepared for trial on July 21. Husband retained Douglas L. Neely on July 10, and four days later, Neely moved to continue the trial, stating that he would be out of town when the trial was scheduled and, in any event, would need additional time to prepare. On July 16, Judge Harmond denied the motion to continue, permitted Neely to withdraw as counsel, and dispensed with the requirements of rule 74 of the Utah Rules of Civil Procedure, which requires that the opposing party serve a notice to appear or appoint counsel on the newly-unrepresented party and stays proceedings "until 20 days after filing the Notice," Utah R. Civ. P. 74(c). On July 20, the day before trial, Husband filed a pro se appearance. Husband simultaneously filed a pro se motion to disqualify Judge Harmond, alleging that the judge's decision violated rule 74 and that the judge was "biased and prejudiced" against him because the denial of the continuance "forc[ed] him] to go to trial without a lawyer."

¶6    The trial was postponed, and Husband's motion to disqualify Judge Harmond was assigned to Judge Anderson, who, on July 22, 2009, denied the motion on three bases. First, Husband had previously moved to disqualify Judge Bagley, and each party

---

[2]The record does not contain an order allowing Cook to withdraw. Thus, it is not clear whether this reappearance notice is a reappearance after withdrawal or an informal means of recalling the motion to withdraw.

is limited to one such motion under rule 63(b)(1)(C) of the Utah Rules of Civil Procedure, *see id.* R. 63(b)(1)(C) ("No party may file more than one motion to disqualify in an action."). Next, Husband had failed to file a certificate of good faith with his motion and a supporting affidavit as required by rule 63(b)(1)(A), *see id.* R. 63(b)(1)(A) ("The motion [to disqualify a judge] shall be accompanied by a certificate that the motion is filed in good faith and shall be supported by an affidavit stating facts sufficient to show bias, prejudice, or conflict of interest."). Finally, the motion lacked merit because there was nothing in the record that demonstrated that Judge Harmond held "'a deep-seated antagonism toward'" Husband. Judge Anderson then set an order to show cause hearing at which Husband was directed to demonstrate why he had not violated rule 11 of the Utah Rules of Civil Procedure, *see id.* R. 11(b), (c)(1)(B) (allowing a court to direct a party to demonstrate that a motion was not submitted for an improper purpose, is warranted by existing law, and is not frivolous).

¶7 On July 27, 2009, after receiving Judge Anderson's ruling, Judge Harmond set a telephone conference to reschedule the trial. Neely reentered his appearance as Husband's counsel on the morning of that conference, and the bench trial was rescheduled for October 8 and 9, 2009, before Judge Harmond. Following trial, the court issued a memorandum decision in which it classified the eight acres of the ranch acquired in 2005 as marital property and the original ranch as Husband's separate property. In addition to a one-half martial interest in the eight acres, the court awarded Wife a one-half equitable interest in the original ranch. In classifying the eight acres as marital property, the court noted that Husband paid for the property with money he received as a gift from his mother. However, it was Wife's salary, as well as loans from Husband's mother and Wife's parents, that covered the parties' expenses and sustained the ranch, allowing Husband to use the gifted money toward the purchase of the additional acreage. With respect to the award of an equitable interest in the original ranch, the court found that there were "exceptional circumstances that require[d] the court to depart from th[e] general rule" that a party retains his separate property. These exceptional circumstances included Wife's work on the ranch, which contributed to its upkeep, and Wife's use of her salary from work outside the home to cover family and ranch expenses, which allowed Husband to work exclusively on the ranch. Because the evidence presented at trial did not allow the court to accurately value the ranch as of the date of the divorce decree, it ordered the ranch sold with the proceeds to be divided equally between the parties.

¶8     Wife's attorney subsequently submitted supplemental factual findings and legal conclusions and a supplemental divorce decree[3] to which Husband objected. Relevant to this appeal, Husband specifically contended that the supplemental findings of fact and conclusions of law included a provision requiring that he remove his personal property from the ranch within thirty days, when no such order had been made by the trial court. He also asserted that he could not comply with an order that the ranch be sold because the ranch no longer belonged to him. Judge Harmond "reviewed all of the filings and f[ound] that the *Supplemental Findings* and *Supplemental Decree* accurately reflect[ed] the court's intentions with respect to this matter, and overrule[d] the *Objections* filed by . . . [Husband]." He then executed the supplemental findings of fact and conclusions of law and the supplemental divorce decree that are the subject of this appeal.

¶9     In the meantime, Judge Anderson had conducted a hearing to determine whether Husband had violated rule 11 in filing his motion to disqualify Judge Harmond. Judge Anderson concluded that Husband had done so because "the motion was filed primarily to effect a delay in the proceedings so that Neely could have more time to prepare." The judge also cited Husband's earlier motion to disqualify Judge Bagley and his failure to include a supporting affidavit[4] as evidence of the lack of merit in Husband's allegation that Judge Harmond was biased and prejudiced. Judge Anderson then sanctioned Husband $1460 in attorney fees for Wife and a $1000 fine to be paid to the court. Husband appeals the decision that he violated rule 11; he does not challenge the type or the amount of the sanction.

## II.  Factual Issues

¶10    Husband challenges the trial court's findings with respect to four factual issues: whether Wife contributed to the day-to-day work on the ranch; whether Wife contributed to the maintenance and preservation of the ranch; whether Wife's parents

---

[3]These pleadings were supplemental to the bifurcated decree of divorce and its associated findings of fact and conclusions of law.

[4]Although Judge Anderson had cited Husband's failure to file a certificate of good faith as one of the reasons for denying the motion to disqualify Judge Harmond, he recognized at the rule 11 hearing that Husband had, in fact, filed a certificate of good faith, though not the affidavit that is required to accompany it.

lent the parties money; and, if so, whether the loaned money was applied toward family expenses. We review challenges to findings of fact for clear error. *See Stonehocker v. Stonehocker*, 2008 UT App 11, ¶ 9, 176 P.3d 476 ("'Findings of fact [regarding real property distribution], whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given the opportunity of the trial court to judge the credibility of the witnesses.'" (quoting Utah R. Civ. P. 52(a))). "A trial court's factual determinations are clearly erroneous only if they are in conflict with the clear weight of the evidence, or if this court has a definite and firm conviction that a mistake has been made." *Kimball v. Kimball*, 2009 UT App 233, ¶ 14, 217 P.3d 733 (internal quotation marks omitted). Consequently, as an appellate court, we give great deference to the trial court and "do[] not lightly disturb . . . [its] factual findings." *In re Estate of Beesley*, 883 P.2d 1343, 1349 (Utah 1994).

¶11    First, Husband argues that "the divorce court made a mistake in deciding that [Wife] helped in [maintaining the ranch] and cleaning and doing maintenance on [the] two apartments [on the ranch property]." Husband claims this finding was erroneous because only Wife testified that she had "participated . . . in running the ranch, including watering crops and the yard, feeding and caring for and working the horses, building and maintaining fences," and had performed cleaning, maintenance, and management services for the onsite apartments, while he and the couple's former attorney, Charles Schultz, both testified that she had not. Husband makes the same argument to support his second claim that the trial court erroneously found Wife to have contributed to the upkeep and preservation of the ranch. With regard to this issue, Wife testified that she had helped build a fence, planted trees, updated the household bathrooms, helped replace the roofs on the two apartments, and paid for various expenses, including the installation of a water heater, with money in her checking account. Husband denied that Wife performed physical labor on the ranch and insisted that he paid the ranch expenses by giving Wife the money to deposit into her account before she wrote any checks. Schultz also testified that he had never seen Wife work on the ranch during his frequent, though generally short, visits.[5] These are classic credibility disputes with limited documentary evidence to support either position. It is within the province of the trial court, as the finder of fact, to resolve issues of credibility. *See Sorenson v. Kennecott-Utah Copper Corp.*, 873 P.2d 1141, 1147 (Utah Ct. App. 1994). In

_____

[5]Schultz testified that he was at the ranch on weekends at least once a month between 1998 and 2005. In 2002, he spent three consecutive months at the ranch.

so doing, the trial court is free to believe one person's testimony over the testimony of multiple others. *See Iacono v. Hicken*, 2011 UT App 377, ¶ 17, 265 P.3d 116 (deferring to the trial court's determination of how much weight to place on each witness's testimony); *In re C.K.F.*, 2011 UT App 175, ¶ 5, 257 P.3d 1045 (affirming the juvenile court's factual findings where the court believed the testimony of the grandmother over the testimony of the father and his brother). After review of the record, we conclude that there was sufficient evidence to support the trial court's findings on these issues and, as a result, we decline to disturb them.

¶12 Husband's third and fourth challenges relate to the trial court's findings that Wife's parents loaned them money and that Wife applied that money toward family expenses. Husband asserts that these findings were erroneous because Wife did not prove that her parents had loaned them money by presenting a returned check or calling her parents to testify on her behalf. Instead, she simply testified about the existence of the loan and how she used it.[6] Although documentary evidence can provide a more definitive resolution of contested issues, trial courts are often faced with the necessity of making factual findings based exclusively on oral testimony. Moreover, trial courts have the benefit of viewing the witnesses firsthand, to assess their demeanor and to consider their testimonies in the context of the proceedings as a whole, making them much better equipped to make credibility determinations based on conflicting oral evidence than an appellate court that has access only to the cold record. *See State v. Calliham*, 2002 UT 86, ¶ 23, 55 P.3d 573. Because of this, we defer to the trial court's judgment as to the weight and credibility of evidence, and "absent a proper showing that the trial court erred, we will not revisit the facts on appeal." *Fisher v. Fisher*, 907

---

[6]Husband also contends that Wife's testimony was not credible because she "could not tell [the court] when her parents supposedly loaned [them] money or how much money they had allegedly loaned." Although Wife's testimony about the loan was cursory, she was never asked to identify when the loan occurred or its amount. Indeed, the loan came up on redirect examination in response to Husband's attorney's suggestion on cross-examination that the only money in Wife's bank account was money given to her by Husband. When her counsel asked her to explain where else the money came from, Wife identified a number of sources, including "some monies borrowed from my parents and [Husband's] mother." Wife's counsel then concluded his redirect, and Husband neither explored the issue further on recross nor offered any rebuttal.

P.2d 1172, 1178 (Utah Ct. App. 1995).  Husband has not demonstrated that the trial court's findings regarding the parental loan were clearly erroneous.  We therefore affirm the court's relevant fact findings.

### III.  Legal Issues Pertaining to Division of Property

¶13    Husband next challenges the trial court's treatment of the ranch property.  First, he asserts that the eight acres categorized as marital property should have been classified as separate property because he used a gift from his mother to purchase it.  Next, he argues that there were no exceptional circumstances that justified the court's award to Wife of a one-half equitable interest in the original ranch, which the court had determined to be his separate property.  In conjunction with this second argument, he claims that Judge Lee had previously decided--in a separate suit between the parties and their neighbors over water rights for the ranch--that Wife did not have an interest in the ranch.  As a result, he argues, this issue was already resolved, and Judge Harmond abused his discretion by awarding Wife an interest.

¶14    "A trial court has considerable discretion concerning property [division] in a divorce proceeding, thus its actions enjoy a presumption of validity." *Jensen v. Jensen*, 2009 UT App 1, ¶ 6, 203 P.3d 1020 (alteration in original) (internal quotation marks omitted); *see also Olsen v. Olsen*, 2007 UT App 296, ¶ 8, 169 P.3d 765 (stating that the trial court has "broad latitude" when distributing property in divorce proceedings (internal quotation marks omitted)).  We therefore "will not disturb a property award unless we determine that there has been a misunderstanding or misapplication of the law resulting in substantial or prejudicial error, the evidence clearly preponderates against the findings, or such serious inequity has resulted as to manifest a clear abuse of discretion." *Jensen*, 2009 UT App 1, ¶ 6 (internal quotation marks omitted).

¶15    In making a division of property, the trial court must "first properly categorize the parties' property as part of the marital estate or as the separate property of one or the other." *Burt v. Burt*, 799 P.2d 1166, 1172 (Utah Ct. App. 1990).  "Each party is presumed to be entitled to all of his or her separate property and fifty percent of the marital property." *Id.*  Before dividing the property according to this presumption, however, the court must consider whether there are any extraordinary circumstances that warrant a departure from the presumptive rule. *See id.; see also Elman v. Elman*, 2002 UT App 83, ¶ 19, 45 P.3d 176 (recognizing that although separate property should generally be awarded to the spouse who brought it into the marriage, the property is

"not 'totally beyond [a] court's reach in an equitable property division'" where "'equity so demands'" (alteration in original) (quoting *Burt*, 799 P.2d at 1169)). "The overriding consideration is that the ultimate division be equitable--that property be fairly divided between the parties, given their contributions during the marriage and their circumstances at the time of the divorce." *Newmeyer v. Newmeyer*, 745 P.2d 1276, 1278 (Utah 1987).

A.  Marital Property

¶16    Husband claims the trial court erred in classifying the additional eight acres of ranch property he purchased in 2005, after the parties were married, as marital property. "Marital property is ordinarily all property acquired during marriage and it encompasses all of the assets of every nature possessed by the parties, whenever obtained and from whatever source derived." *Dunn v. Dunn*, 802 P.2d 1314, 1317-18 (Utah Ct. App. 1990) (internal quotation marks omitted). Husband contends that this principle does not apply here because he received the funds to purchase the property from his mother and money gifted to only one spouse during the marriage may retain its separate character. *See Jensen*, 2009 UT App 1, ¶ 10 ("'[T]rial courts making "equitable" property division . . . should . . . generally award property acquired by one spouse by gift and inheritance during the marriage . . . to that spouse, together with any appreciation or enhancement of its value . . . .'" (first and second omissions in original) (quoting *Mortensen v. Mortensen*, 760 P.2d 304, 308 (Utah 1988))). He also contends that the trial court "did not give any legal reason why the property [he] bought [in 2005] . . . should be treated any differently than the property that was the original Ranch," which the court classified as Husband's separate property.

¶17    The trial court recognized that Husband had paid for the additional acreage using money that his mother had given to him. It nevertheless concluded that the eight acres were best categorized as marital property because it found that Wife had "worked the entire marriage and contributed all her income toward the marriage, and worked to maintain the Ranch . . . and the apartments, and so allowed [Husband] to apply the gifted money toward the [additional eight acres]." The court's findings were based on Wife's testimony that she worked outside the home during the entire marriage, sometimes even holding two jobs. Her testimony was corroborated by Schultz, and even Husband admitted that he earned limited income to support his family from working the ranch and renting the apartments.

¶18    We have concluded that the trial court's findings regarding Wife's contributions toward the preservation and maintenance of the ranch were adequately supported, and Husband has not challenged the court's findings regarding Wife's work outside the home and her significant financial contributions to family expenses. Husband does state in his brief that "mutual expenditure of funds to meet the needs of the family cannot alone [justify] . . . converting a premarital interest to a marital interest." To the extent that this is a challenge to the court's factual findings regarding Wife's significant assumption of the burden of the family expenses, Husband does not marshal the evidence in support of the court's findings that Wife's income supported the family and the ranch so that Husband could contribute a majority of his time to working the ranch, which provided limited income. He therefore has not adequately advanced a challenge to those factual findings. *See generally Chen v. Stewart*, 2004 UT 82, ¶ 19, 100 P.3d 1177 (requiring an appellant to "marshal the evidence in support of the findings and then demonstrate that despite this evidence, the trial court's findings are so lacking in support as to be against the clear weight of the evidence" and noting that failure to do so results in "this court assum[ing] that all findings are adequately supported" (internal quotation marks omitted)). Consequently, Husband's claim that the court's conclusion that the eight acres were marital property was based on insufficient evidence is not persuasive. Furthermore, if Husband's assertion that "mutual expenditure of funds to meet the needs of the family cannot alone [justify] . . . converting a premarital interest to a marital interest" is a challenge to the legal basis for the classification of the eight acres, Husband has not provided any supporting legal analysis or authority. *See generally* Utah R. App. P. 24(a)(9) ("The argument shall contain the contentions and reasons of the appellant with respect to the issues presented, . . . with citations to the authorities, statutes, and parts of the record relied on."). We therefore affirm the court's award of one-half of the eight acres to Wife in accordance with the presumption that marital property is divided evenly.

B.  Equitable Interest

¶19    Husband next contends that the trial court abused its discretion when it awarded Wife a 50% equitable interest in the original ranch. He first argues that Judge Lee, in an earlier, separate litigation between the parties and their neighbors regarding water rights, had determined that Wife did not have an interest in the ranch. Wife disagrees, stating that Judge Lee dismissed her claims from that litigation solely because she was not listed on the title to the ranch and did not reach the issue of whether she had an interest. Regardless of whether Judge Lee made a determination about Wife's interest

in the ranch in the water rights case, his decision did not preclude the divorce court's award of an equitable interest for purposes of property division. *See generally Elman*, 2002 UT App 83, ¶ 19 ("[S]eparate property is not totally beyond [a] court's reach in an equitable property division. The court may award the separate property of one spouse to the other spouse in extraordinary situations where equity so demands." (second alteration in original) (citation and internal quotation marks omitted)); *Kunzler v. Kunzler*, 2008 UT App 263, ¶ 36, 190 P.3d 497 (same).

¶20 Judge Harmond concluded that there were "exceptional circumstances" to warrant giving Wife a 50% equitable interest in the original ranch property. In making this determination, Judge Harmond relied upon his findings that "all of the proceeds of [Wife]'s income went for the maintenance of the ranch and the family," that Wife's "efforts contributed to the preservation of the Ranch and the general welfare of the family," that Wife's "working outside the home also allowed [Husband] to spend his time working the Ranch," and that "it would be inequitable for [Wife] to have worked the entirety of the marriage contributing both her earnings and personal labor to the maintenance and running of the Ranch, and then to be left with nothing at the termination of this marriage." Husband has not convinced us that it was an abuse of discretion for the trial court to conclude that Wife's efforts in bearing the financial burdens of the family in order to allow Husband to work almost exclusively on the ranch, coupled with Wife's financial and physical contribution to the maintenance and preservation of the ranch, constituted "extraordinary" or "exceptional" circumstances that warranted the grant of an equitable interest.[7] *See generally Hall v. Hall*, 858 P.2d

---

[7]The bulk of Husband's briefing on this issue focuses on the fact that Wife's contributions, whatever they may have been, did not augment, enhance, or protect the ranch because the ranch actually declined in value during the marriage. The trial court, however, did not award Wife an equitable interest on the basis that her efforts increased the value of the ranch. Instead, it relied on the separate category of "extraordinary situations where equity so demands," *see Jensen v. Jensen*, 2009 UT App 1, ¶ 10, 203 P.3d 1020 (internal quotation marks omitted); *see generally id.* ¶ 11 ("The court [in *Mortensen v. Mortensen*, 760 P.2d 304 (Utah 1988),] described several circumstances where a spouse's separate property . . . may be awarded in whole or in part to the other spouse, most notably for purposes of the present appeal: (1) where the nonowner spouse has 'contributed to the enhancement, maintenance or protection of the property,' *or* (2) there

(continued...)

1018, 1023 (Utah Ct. App. 1993) ("We recognize the power of the trial court to effect an equitable distribution of property by considering both parties' 'contributions during the marriage and their circumstances at the time of the divorce.'" (quoting *Newmeyer v. Newmeyer*, 745 P.2d 1276, 1278 (Utah 1987))).  We therefore uphold the trial court's award to Wife of a 50% equitable interest in the original ranch property.[8]

## IV.  Order of Sale

¶21     Husband's seventh and eighth contentions relate to the trial court's order that the ranch be sold (the order of sale).  Husband claims that the order of sale is impossible to comply with because the ranch had been sold prior to the entry of the divorce decree.  Husband also contends that the sale prevented the trial court from awarding Wife a one-half interest in the ranch when ownership transferred prior to the award of such interest.

¶22     At trial, Husband testified that the ranch had been sold in June 2007.  Wife objected to the testimony, indicating that "this line of questioning is irrelevant, wholly

---

[7](...continued)
are 'other extraordinary situations where equity so demands.'" (emphasis added) (quoting *Mortensen*, 760 P.2d at 308)).  Furthermore, it is not clear that the fact that a property has decreased in value is sufficient, in itself, to preclude a finding that the other spouse has "contributed to the enhancement, maintenance or protection of the property," *Jensen*, 2009 UT App 1, ¶ 11 (internal quotation marks omitted).  For these reasons, we also decline to consider Husband's argument that if Wife were entitled to an equitable interest, "she is only entitled to the amount that anything she did actually increased the value of the Ranch."

[8]Husband also contends that the trial court failed to make detailed findings to support its decision to classify the original ranch as marital property.  There are two problems with this contention.  First, the trial court did not categorize the original ranch as marital property but rather concluded that it was separate property to which Wife was entitled an equitable interest.  Second, Husband did not object to the lack of adequate findings in the trial court, and the issue is therefore unpreserved for appeal.  *See generally In re K.F.*, 2009 UT 4, ¶ 59, 201 P.3d 985 ("[A] party [must] challenge in the trial court the adequacy of the court's factual findings to preserve an adequacy of the findings issue for appeal.").

irrelevant to this case," but she did not move to strike the testimony. Wife then preempted Husband's proffer of the deed, stating, "Indeed, I believe the document, the one[] they haven't sought to admit yet, . . . is irrelevant to this case. It's an *established fact* that he has conveyed, that there is a deed recorded with the Wayne County Recorder's Office." (Emphasis added.) Husband responded by asserting that the "[c]ourt can't divide property that doesn't exist at the time of the divorce." Because the sale occurred after Wife filed for divorce in May 2006, however, the trial court asserted that the ranch would be subject to the court's orders in the divorce. Wife informed the court that because she had also recorded a lis pendens on the ranch and the conveyance would "openly be discussed in a future lawsuit," the issue was irrelevant to the current proceeding. The court sustained Wife's objection. Husband then offered the warranty deed into evidence, and Wife objected "on relevancy grounds." The trial court again sustained the objection, and the deed was not received into evidence.

¶23 We review a trial court's ruling on the admissibility of evidence for an abuse of discretion. *See Vigil v. Division of Child & Family Servs.*, 2005 UT App 43, ¶ 8, 107 P.3d 716 ("Trial courts are afforded broad discretion in determining the admissibility of evidence; thus we will not disturb a trial court's ruling whether to admit or exclude evidence absent an abuse of discretion."). We conclude that the decision to exclude the warranty deed evidencing Husband's sale of the property in June 2007 exceeded the trial court's discretion. Although it appears undisputed that Husband has sold the ranch, the validity of that sale and its effect on Wife's equitable interest appear to be still at issue. It is obvious the ranch's ownership status is relevant to its disposition, particularly given that sale of the ranch and distribution of its proceeds were the means the trial court selected to compensate Wife for her one-half interest. We therefore remand to the trial court for the purpose of determining whether the order of sale is legally capable of implementation. On remand, the court should admit the deed, consider whatever additional admissible evidence the parties may offer regarding the sale, and then determine the legal status of the ranch and the implication of that status with regard to the order of sale previously entered by the court. The court should then decide whether the sale of the ranch remains an appropriate and effective means to provide Wife with the benefit of her interest in the ranch or whether another approach is more appropriate. The supersedeas bond, ordered by the trial court to stay enforcement of the judgment during the appeal, shall remain in effect until the trial court decides otherwise.

## V. Removal of Personal Property

¶24    Husband also challenges a provision in the supplemental divorce decree requiring that he remove all of his personal property from the ranch within thirty days (the order of removal). Husband objected to the order of removal in the trial court, asserting that the court never made this ruling at trial, either orally or in its memorandum decision, but rather that Wife's counsel later added it to protect Wife from any claims that Husband's personal property was missing. After reviewing Husband's objection, however, the trial court stated that it "ha[d] reviewed all of the filings and f[ound] that the *Supplemental Findings* and *Supplemental Decree* accurately reflect[ed] the court's intentions with respect to this matter." Consequently, it overruled the objection and executed the supplemental decree. Husband has pointed us to no authority that supports his contention that this decision was improper or beyond the court's authority, and we therefore decline to disturb it. We note, however, that many of the personal property items that Husband was expected to remove may be necessary to the operation of the ranch, and our affirmance of the order of removal is not intended to preclude the trial court from reassessing that order on remand when reconsidering the order of sale.[9]

## VI. Rule 11 Sanctions

¶25    Finally, Husband challenges Judge Anderson's determination that Husband violated rule 11 of the Utah Rules of Civil Procedure when he filed his motion to disqualify Judge Harmond. Rule 11 prohibits the filing of a motion that lacks legal and evidentiary support or a filing made for an improper purpose. *See* Utah R. Civ. P. 11(b)-(c).

> In reviewing a trial court's imposition of sanctions under
> rule 11, we first review the trial court's factual findings

---

[9]Regardless of the status of the title to the ranch, at the time of trial, Wife apparently still resided on the property and Husband engaged in a number of activities there. The trial court therefore allowed Husband "reasonable access" to the ranch for horse training and maintenance of the property until the ranch was sold. Assuming the status quo has remained unchanged, the trial court on remand should consider whether Husband needs to keep certain items on the ranch to conduct those activities or any others reasonably necessary to the maintenance or preservation of the property.

under the "clearly erroneous" standard. We then review the trial court's legal conclusions for correctness. Finally, we review the type and amount of sanctions imposed under the abuse of discretion standard.

*Pennington v. Allstate Ins. Co.*, 973 P.2d 932, 936-37 (Utah 1998) (citations omitted).

¶26 Judge Anderson found that Husband had filed the disqualification motion for the purpose of delaying the proceedings so that his counsel, Neely, would have more time to prepare. He then concluded that the object of delaying the scheduled trial was an improper purpose for a recusal motion under the circumstances. Judge Anderson further stated,

> The Motion was legally meritless because [Husband] had previously filed a motion to recuse Judge Bagley. The motion was also factually meritless because it lacked the affidavit required by Rule 63[ of the Utah Rules of Civil Procedure]. Even if one accepts the unsupported claims of [Husband,] they do not show the "deep seated antagonism" required to disqualify a judge based upon his rulings or decisions in the case.

(Footnote omitted.)

¶27 On appeal, Husband focuses almost exclusively on the fact that he did not know when he filed the motion to disqualify Judge Harmond that he had already filed a motion to disqualify Judge Bagley through his former attorney. *See generally* Utah R. Civ. P. 63(b)(1)(C) ("No party may file more than one motion to disqualify in an action."). He contends that attorneys are only required to conduct reasonable prefiling inquiry and cannot violate rule 11 solely because they turn out to be incorrect and that pro se litigants should therefore be held to an even lesser standard. He continues, "There is no case law in Utah that says that anyone, much less a pro se person like me, can be held in violation of Rule 11 for filing a motion to disqualify a judge," and ends with a statement that he has located only one case in Utah where a pro se litigant was held to be in violation of rule 11 by the district court for any reason and that decision was reversed on appeal. He does not provide a citation for that decision or any analysis of its facts, reasoning, or applicability to the case at hand, however. The balance of Husband's argument section on this issue describes his view of the circumstances that

led him to file the motion to disqualify Judge Harmond and ends with a one-statement conclusion that he did not file the motion for an improper purpose.

¶28   Although pro se litigants are often afforded reasonable indulgence by courts, they are held to the same standard of knowledge and procedure as attorneys when undertaking to represent themselves. *See Allen v. Friel*, 2008 UT 56, ¶ 11, 194 P.3d 903. Reasonable efforts in this scenario required Husband to seek information about prior filings from his former counsel, e.g., by obtaining his client folder or directly asking his former attorneys or the court. Husband testified that Cook never provided this information to him, despite his admission that Cook did give him the rest of his case file, but Judge Anderson stated in his decision that he did not find Husband's "claim that he did not know about the motion to recuse Judge Bagley" credible. We defer to Judge Anderson's factual finding. *See Pennington*, 973 P.2d at 936 (stating that factual findings supporting a conclusion that rule 11 has been violated are reviewed under the clearly erroneous standard); *see also* Utah R. Civ. P. 52(a) (requiring that "due regard" be given to the trial court's credibility assessments); *Kimball v. Kimball*, 2009 UT App 233, ¶ 14, 217 P.3d 733 ("A trial court's factual determinations are clearly erroneous only if they are in conflict with the clear weight of the evidence, or if this court has a definite and firm conviction that a mistake has been made." (internal quotation marks omitted)).

¶29   By focusing so narrowly on his lack of knowledge, Husband has failed to adequately contest the other findings supporting Judge Anderson's decision. Judge Anderson found that Husband had filed the motion to delay the proceedings so that his new attorney would have more time to prepare and that the motion to disqualify Judge Harmond was not accompanied by an affidavit, as required. Consequently, he concluded that the motion was filed for an improper purpose and was factually meritless, both of which are violations of rule 11 and are independent grounds for sanctions. *See* Utah R. Civ. P. 11(b)-(c) (allowing sanctions if a party files a motion for an improper purpose, that lacks a legal basis, or that lacks evidentiary support). Husband does not challenge the findings underlying these conclusions. Without an adequate challenge to these alternative grounds for concluding that Husband had violated rule 11, we must uphold the decision. *See generally Heber City Corp. v. Simpson*, 942 P.2d 307, 312 (Utah 1997) ("When a party fails to challenge a factual finding and marshal the evidence in support of that finding, we assume[] that the record supports the finding[] of the trial court . . . ." (first alteration in original) (internal quotation marks omitted)); *Edwards v. Powder Mountain Water & Sewer*, 2009 UT App 185, ¶ 25, 214 P.3d 120 (affirming a conclusion that rule 11 had been violated when the findings were supported). Moreover, Husband does not contest the type or amount of the sanction

imposed.  Because we conclude that there was a basis for Judge Anderson's determination that Husband violated rule 11, we affirm the court's entry of rule 11 sanctions.

## VII.  Conclusion

¶30     As discussed in the body of this decision, we affirm the trial court except with respect to the order of sale.  On that issue, we reverse the ruling that the ranch be sold and remand for the trial court to reconsider the order of sale in light of Husband's evidence that the ranch was sold in June 2007, Wife's contention that she recorded a lis pendens prior to the 2007 sale, and the court's August 2007 order that the parties not sell any assets, as well as any other considerations that the court in its judgment deems pertinent.  On remand, the court need not reconsider its award to Wife of one-half of the ranch but instead must determine what her remedy should be under the circumstances it finds to be relevant.  The trial court may amend the order requiring Husband to remove personal property from the ranch as it deems appropriate.

_____
Stephen L. Roth, Judge

-----

¶31     WE CONCUR:

_____
J. Frederic Voros Jr.,
Associate Presiding Judge

_____
William A. Thorne Jr., Judge