IN THE UTAH COURT OF APPEALS

----ooOoo----

| | | |
|---|---|---|
| Cassie Jean Clarke, | ) | MEMORANDUM DECISION |
| | ) | |
| Petitioner and Appellee, | ) | Case No. 20110230-CA |
| | ) | |
| v. | ) | F I L E D |
| | ) | (November 23, 2012) |
| Joshua Clarke, | ) | |
| | ) | 2012 UT App 328 |
| Respondent and Appellant. | ) | |

-----

Third District, Tooele Department, 084300416
The Honorable Stephen L. Henriod

Attorneys:     Suzanne Marelius, Salt Lake City, for Appellant
               Gary Buhler, Grantsville, for Appellee

-----

Before Judges Orme, Roth, and Christiansen.

ROTH, Judge:

¶1     This case arises out of a divorce rife with conflict between Joshua Clarke (Husband) and Cassie Jean Clarke (Wife).  Husband challenges several decisions made by the district court in entering the divorce decree, particularly concerning the court's property distribution and its decision to award full legal and physical custody of the parties' children to Wife.  Husband also challenges the district court's decision to hold him in contempt and award related attorney fees to Wife.  We affirm but reverse and remand for recalculation of attorney fees.

I. Custody

¶2    Husband first challenges the district court's decision to award Wife sole legal and physical custody of their children.  In reviewing "initial custody awards, we give trial courts broad discretion.  So long as that discretion is exercised within the confines of the legal standards we have set . . . we will not disturb the resulting award." *Davis v. Davis*, 749 P.2d 647, 648 (Utah 1988) (citations omitted).  "The trial court's discretion stems from the reality that in some cases the court must choose one custodian from two excellent parents, and its proximity to the evidence places it in a more advantaged position than an appellate court." *Tucker v. Tucker*, 910 P.2d 1209, 1214 (Utah 1996).  Indeed, "[o]ur statutes and case law are consistent and clear with respect to the considerable discretion allowed the trial court in child custody matters, with the controlling factor being that which is in the best interest and welfare of the minor child." *Rice v. Rice*, 564 P.2d 305, 306 (Utah 1977); *see also* Utah Code Ann. § 30-3-10(1)(a) (Supp. 2012)[1] ("In determining any form of custody, the court shall consider the best interests of the child . . . ."); *id.* § 30-3-10.2(2) (2007) (listing several factors that are relevant to determining "the best interest of a child"); *Mecham v. Mecham*, 544 P.2d 479, 480 (Utah 1975) (explaining that in determining custody, the best interest of the child "is of paramount importance").  The determination of the best interest of the child requires consideration of a number of nonexhaustive statutory factors, which have been supplemented and expanded by our case law.  *See* Utah Code Ann. §§ 30-3-10(1)(a)(i)-(iv), -10.2(2); *see, e.g., Tucker*, 910 P.2d at 1215 (listing numerous factors the district court may consider to determine the best interest of the child).

¶3    In challenging the district court's decision to award sole legal and physical custody of the children to Wife, Husband argues that the "court failed to properly analyze, weigh and apply the statutory and common law custody factors and therefore erred in awarding custody to" Wife.  In particular, Husband raises two arguments.  First, he argues that the district court "did not give sufficient weight to . . . [Wife]'s criminal conviction for custodial interference."  Second, Husband argues that the district court "did not give proper weight to [his] clearly established role as the primary caretaker of the children during the marriage."  However, in asserting that the court should have given more weight to these particular factors, Husband overlooks other factors that the district court considered more important in determining the best interest

---

[1]We cite to the most recent version of the Utah Code.

of the children here. Although we will address the particular issues raised by Husband in turn, we first examine the basis for the district court's decision.

¶4    The court recognized that both Husband and Wife "love the children" and "the children have good relationships with each parent." The court explained, however, that "[j]oint legal custody could not possibly work" here because there was a great deal of "animosity" between Husband and Wife, and "[n]either parent is likely to allow the children frequent and continuing contact with the other parent, absent [c]ourt [o]rders."

¶5    In deciding to award sole legal and physical custody to Wife, the court explained that its "ruling is based upon very serious concerns for the health and safety of the children." In particular, the court was concerned about Husband's "antipathy to scientific medical care" and his preference for "homeopathic . . . solutions to medical issues that don't involve prescription medication." The court used as an example that Husband "refused to allow the children to be immunized when pediatric medicine normally advises strongly that this be done, and [he] continued to refuse until he was bribed to cooperate by [Wife] . . . who bought a hot tub and hair implants for him, at which point he agreed to allow immunizations." Husband even stated to the court that "if he had joint legal custody, he would be able to block immunizations" for the children. Another incident that the court found significant occurred when their daughter, then just under a year old, "developed a serious rash," which was eventually diagnosed as a "serious dry skin problem" that had developed into a staph infection. Husband "would only allow [the daughter] to be treated by a homeopathic physician, who diagnosed an allergy." Wife, however, took the daughter to a dermatologist, who diagnosed the bacterial infection and "prescribed antibiotic ointments, which cleared up the condition immediately." Based on this conduct, the court determined that Husband was inflexible, was unable to compromise, had repeatedly refused to cooperate, and had a difficult time making decisions on his own, especially in short time periods, which the court reasoned "could result in serious harm to the children if he were the custodial parent." Based on these incidents and other facts, the court concluded that because Husband "lack[ed] the ability to compromise[ and] make good decisions quickly," he would not "act in the children's best interests with respect to their health and safety"; rather, the court concluded "that the parent most likely to act in the best interests of the children is [Wife] with respect to medical decisions, health care decisions, and with the ability to be flexible and compromise to promote the children's best interest."

¶6     Husband argues, however, that the district court "did not give sufficient weight to . . . [Wife]'s criminal conviction for custodial interference." We disagree. In arriving at its decision, the court recognized the failings of both Husband and Wife in cooperating and communicating with each other and in following court orders. The court explained that "[b]oth parents have demonstrated an unwillingness or inability to work well with the other or to recognize how the best interests of the children would be served if the parents could talk, cooperate or compromise." The court also explained that "neither parent has shown much respect for [c]ourt [o]rders, unless they believed the [c]ourt [o]rder benefitted them." Indeed, the court held both Husband and Wife in contempt for violating court orders: Husband had refused to pay child care expenses despite a court order directing him to do so; Wife had interfered with Husband's court-ordered parent-time. In particular, Husband had demanded that he have the children for an entire month, contrary to the established parent-time arrangement; Wife then kept the children from Husband for over a month, claiming that she was afraid that if she turned the children over to him for regularly scheduled parent-time he would not return them. Based on that conduct, Wife was convicted of misdemeanor custodial interference. The court took this circumstance into account, however, explaining that it made its "ruling cognizant of the fact that [Wife] has ignored court orders . . . and has blocked parent time between [Husband] and the children."[2] Nonetheless, the court ultimately gave more weight to its concerns that Husband would not "act in the children's best interest with respect to their health and safety." Thus, in consideration of this and other factors, the court decided to award sole legal and physical custody to Wife. And to reduce the potential for Wife to interfere in his relationship with the children, the court awarded extended parent-time to Husband, explaining that the schedule would need "to be inflexible, with as little ability to deviate on the part of the custodial parent as possible."

¶7     Husband also argues that the district court "did not give proper weight to [his] clearly established role as the primary caretaker of the children during the marriage." *See* Utah Code Ann. § 30-3-10(1)(a)(iii) (Supp. 2012) (considering "the extent of bonding between the parent and child, meaning the depth, quality, and nature of the relationship between a parent and child"); *id.* § 30-3-10.2(2)(d) (2007) (considering "whether both parents participated in raising the child before the divorce"); *Davis v.*

---

[2]In addition, the court expressed "some concern" that Wife had "mov[ed] a boyfriend into the house" and would "smoke[] in front of the children."

*Davis*, 749 P.2d 647, 648 (Utah 1988) ("[C]onsiderable weight should be given to which parent has been the child's primary caregiver." (citing *Pusey v. Pusey*, 728 P.2d 117, 120 (Utah 1986))); *accord Hudema v. Carpenter*, 1999 UT App 290, ¶ 26, 989 P.2d 491 (considering the best interest of the child in a custody modification case, and explaining that a "critically important" factor is "continuity of placement" when "the child is thriving, happy, and well-adjusted"). The court did not explicitly identify either Husband or Wife as the primary caregiver. It did acknowledge, however, that by "work[ing] shifts which are approximately opposite each other," the parties had been able to "avoid surrogate care for the children." Specifically, Wife would work during the day and had the children overnight while Husband worked nights and would care for the children during the day. The court noted, however, that the "evidence was in dispute with respect to whether or not [Husband] fell asleep when he should have been watching the children during the day." Thus, although the court acknowledged that Husband had cared for the children during the day, its decision not to designate either party as the primary caregiver seemed to rest on its conclusion that each party played a significant role in caring for the children and also possibly reflected the court's doubts as to whether Husband cared for the children as much as he claimed.

¶8    Ultimately, the court supported its decision with a thorough and thoughtful analysis. In the end, the court gave more weight to its concerns that Husband would not "act in the children's best interest with respect to their health and safety" and decided to award sole legal and physical custody to Wife. The court's explanation of its reasoning demonstrates that it carefully considered and weighed competing factors in making a difficult decision. Husband has not borne his burden of showing that the district court's decision to award sole legal and physical custody of the children to Wife was an abuse of discretion. *See generally Davis*, 749 P.2d at 648 ("So long as [the court's] discretion is exercised within the confines of the legal standards we have set . . . we will not disturb the resulting [custody] award." (citation omitted)).

## II. Division of Assets and Debts

¶9    Husband also challenges the district court's division of assets and debts. *See generally* Utah Code Ann. § 30-3-5(1) (Supp. 2012) ("When a decree of divorce is rendered, the court may include in it equitable orders relating to the children, property, debts or obligations, and parties."). In dividing property in a divorce proceeding, "'marital property is ordinarily divided equally between the divorcing spouses and separate property, which may include premarital assets, inheritances, or similar assets,

will be awarded to the acquiring spouse.'" *Stonehocker v. Stonehocker*, 2008 UT App 11, ¶ 13, 176 P.3d 476 (quoting *Olsen v. Olsen*, 2007 UT App 296, ¶ 23, 169 P.3d 765). "Trial courts have considerable discretion in determining . . . property distribution in divorce cases, and" the court's decision "will be upheld on appeal unless a clear and prejudicial abuse of discretion is demonstrated." *Id.* ¶ 8 (omission in original) (internal quotation marks omitted). "That the property distribution may not have been mathematically equal is not sufficient grounds to constitute an abuse of discretion, since a fair and equitable property distribution is not necessarily an equal distribution." *Colman v. Colman*, 743 P.2d 782, 789 (Utah Ct. App. 1987), *modified on other grounds by Jones & Trevor Mktg., Inc. v. Lowry*, 2012 UT 39, 284 P.3d 630.

¶10    Husband's first contention is that the district court's division of marital property, particularly the allocation of equity in the marital home, was inequitable. The parties stipulated that there was roughly $58,000 of equity in the marital home, and the court reasoned that Husband and Wife would each be entitled to receive about $29,000 if the equity were equally divided. The district court determined, however, that Husband owed Wife about $32,000 to reimburse her for a premarital inheritance that she had used to pay off Husband's loans on a truck and boat he had purchased before the marriage. Husband conceded that Wife had paid off his truck and boat and "he should pay [Wife] back for what she spent on his truck and his boat." The court, therefore, awarded Husband's share of the home equity to Wife to reimburse her inheritance, and Wife agreed to waive the roughly $3,000 difference between the amount Husband owed her and the amount of Husband's share of the equity.

¶11    Husband characterizes the court's decision as an outright award of 100% of the home equity to Wife. He argues that such an award is inequitable because the court should have divided the home equity equally. Husband proposes an alternative distribution, asserting that the court should have deducted the $32,000 from the total amount of the $58,000 home equity. According to Husband, this would leave a remainder of about $26,000, which the court should have divided equally between Husband and Wife, with each being awarded about $13,000. Husband's argument, however, misconstrues the reasoning behind the district court's decision.

¶12    Although the district court's approach resulted in Wife being awarded 100% of the home equity, the court was not simply dividing marital property but was also reimbursing Wife's separate, nonmarital property. As the district court clearly explained, it did not award Wife 100% of the home equity outright; rather, it divided

the home equity equally between Husband and Wife as marital property and then awarded Husband's share of the equity to Wife to reimburse her for the nonmarital inheritance she had used to pay off the premarital debt on Husband's vehicles. The court explained that it used Husband's share of the home equity to repay Wife her inheritance monies because it was a simple resolution that would result in "the least continuing connection as possible" between Husband and Wife, who were embroiled in a highly contentious divorce. If Husband's approach were adopted, however, the amount he owed to Wife to reimburse her separate property would be deducted from the total amount of the home equity, a marital asset, before it was divided between Husband and Wife. The result would be that Husband's separate debt to Wife would be paid out of marital assets, meaning that Wife would in effect be paying herself. Conversely, the court's solution of equally dividing the amount of home equity and then using Husband's share to pay the debt he owed to Wife results in Husband using only his share of the marital property to reimburse Wife for her separate, nonmarital property.

¶13   Ultimately, the court's decision to award Wife 100% of the equity in the marital home enabled the court to both divide marital property and reimburse separate, nonmarital funds, while reducing the potential for further conflict between the parties. *See generally Mortensen v. Mortensen*, 760 P.2d 304, 308 (Utah 1988) (explaining that in dividing marital and nonmarital property, a spouse with separate property "should not lose the benefit of his or her gift or inheritance by the trial court's automatically or arbitrarily awarding the other spouse an equal amount of the remaining property which was acquired by their joint efforts to offset the gifts or inheritance"). Accordingly, we conclude that the district court acted within its discretion in dividing the equity in the marital home and then allocating Husband's share of the equity to reimburse Wife her separate, nonmarital property.[3]

---

[3]Husband also asserts that the district court awarded him the truck and boat "in exchange for [the] award of home equity to [Wife]" and that the value of the vehicles is disproportionate to the value of his half of the home equity. As we have explained, however, the court used Husband's share of the home equity to offset the debt he owed to Wife and reimburse her separate, nonmarital property. The court then awarded Husband the two debt-free vehicles as his separate nonmarital property and not as an offset for the award of home equity to Wife, as Husband now claims.

¶14    Second, Husband challenges the district court's determination that the amount he owed Wife was $32,000.  As we have explained, Husband conceded that Wife paid off the loans and that "he should pay [her] back for what she spent on his truck and his boat."  But he disputes the amount the court ordered him to pay, arguing that the $32,000 award was based on "[u]nverified [t]estimony [and] [w]as [r]ebutted by [d]ocumentary [e]vidence."  According to Husband, Wife "testified, without producing documentation of any sort," that she had paid about $32,000 to pay off the boat and truck loans but he had produced documentation that Wife had actually paid a lesser amount.  However, Husband did not produce that evidence until months after the trial.  Husband thus challenges the court's determination that he owed $32,000 to Wife on the basis that the court should have reconsidered the amount of the award in light of the new evidence Husband produced after the trial.

¶15    We conclude that the district court acted within its discretion in deciding not to consider new evidence related to the amount Wife had paid toward Husband's truck and boat.  Five months after trial, Husband submitted to the court documentation of the amount Wife had contributed to pay off Husband's truck and boat loans and asked the court to reconsider its property division.  Husband's explanation for his failure to present the evidence at trial was that he did not "have [that evidence] until after trial because [h]e thought [Wife] had no evidence" to present as to the amount she had paid.  The court declined to consider Husband's new evidence or to reconsider its decision about the amount owed to Wife.

¶16    Although Husband presented evidence that arguably would have allowed the court to make a more accurate determination of the amount Wife had spent to pay off his truck and boat, we do not think that the court abused its discretion in declining to consider it.[4]  *See generally* Utah R. Civ. P. 54(b) ("[A]ny order or other form of decision . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all

---

[4]According to the documents provided by Husband, the actual amount Wife used of her inheritance to pay off the loans on his truck and boat was about $25,000--a difference of about $7,000 from the $32,000 as determined by the trial court based on the evidence presented at trial.  However, if Husband's share of the home equity were similarly awarded to Wife to repay this debt of $25,000, she would owe Husband a difference of about $4,000, which is not so different from the $3,000 Wife was willing to waive.  *See supra* ¶ 10.

the parties . . . is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties."); *IHC Health Servs., Inc. v. D&K Mgmt., Inc.*, 2008 UT 73, ¶ 27, 196 P.3d 588 ("[R]econsideration of an issue before a final judgment is within the sound discretion of the district court.").[5] Husband's explanation for why he did not produce this documentation until after trial suggests that the evidence was available at the time but he chose not to present it because he thought that Wife would be unable to prove the amount she had paid toward his truck and boat. Only after Husband's strategy was proved ineffective and the district court decided the issue unfavorably to Husband did he attempt to put the evidence before the court through his motion to reconsider. *See generally Trembly v. Mrs. Fields Cookies*, 884 P.2d 1306, 1311 (Utah Ct. App. 1994) (providing that in deciding whether to reconsider a previously-made decision, the court may consider, among other things, whether "a party offers new evidence"). *See also, e.g., In re L.M.*, 2003 UT App 75, ¶ 8, 68 P.3d 276 ("Under rule 59," newly discovered evidence is that which is "material, competent, and in fact newly discovered" and "could not, by due diligence, have been discovered and produced at trial." (citation and internal quotation marks omitted)). A trial court has considerable discretion in deciding whether to reconsider a decision based on new evidence. We cannot say that the district court abused that discretion in refusing to do so under these circumstances.

¶17 Third, Husband challenges the district court's division of marital debt. *See generally* Utah Code Ann. § 30-3-5(1)(c)(i) (Supp. 2012) ("The court shall include . . . in every decree of divorce . . . an order specifying which party is responsible for the payment of joint debts, obligations, or liabilities of the parties contracted or incurred

---

[5]In addressing whether the district court should have revised its decision in light of the new evidence presented by Husband, the parties have relied on rules 54(b) and 59(a) of the Utah Rules of Civil Procedure. *See generally Gillett v. Price*, 2006 UT 24, ¶ 10, 135 P.3d 861 (distinguishing between "post-final-judgment motions" to which rule 59 applies and "motions . . . to reconsider or revise nonfinal judgments" to which rule 54 applies). The parties have not focused on which rule is better-applied here. Nonetheless, it appears to us that rule 54(b) is more applicable because, although the court had held a trial and entered a memorandum decision adjudicating most of the issues pertaining to the divorce decree, that memorandum decision left open some other issues for decision, and a final divorce decree was not entered until December 2010, several months after Husband's motion for reconsideration.

during the marriage."). *See also Sinclair v. Sinclair*, 718 P.2d 396, 398 (Utah 1986) ("The law contemplates a fair and equitable, not an equal, division of the marital debts."); *Rehn v. Rehn*, 1999 UT App 41, ¶ 19, 974 P.2d 306 ("In a divorce action, there is no fixed formula upon which to determine a division of debts."). Other than the property and accompanying debts that had already been distributed, the district court found that Husband and Wife had two significant debts: a credit card with an outstanding balance of about $7,000 and a debt of about $16,000 owed to Husband's father. The district court ordered that Wife and Husband pay back the debt to Husband's father equally but ordered Husband to assume the credit card debt. In challenging the division of marital debt, Husband's argument is that "[i]n view of the calculation herein whereby [Wife] received 100% of the assets of the marital estate and due to the debt division, [Husband] received a negative equity of $3,340, the failure to divide the joint debts of the marriage on an equal basis is an abuse of discretion and must be reversed." We have already concluded, however, that Husband has misperceived the district court's division of the equity in the marital home. As this is the only basis on which Husband challenges the division of the marital debt, we decline to consider this issue further.

¶18    In summary, the district court's division of assets and debts was within the bounds of its discretion, and we decline to disturb it.

### III. Motion to Continue

¶19    Husband challenges the district court's decision to deny his motion to continue the trial. The district "court may postpone a trial for good cause upon such terms as are just." Utah R. Civ. P. 40(b). "A party is not granted a continuance as a matter of right, but rather as an act of discretion by the court . . . ." *Griffiths v. Hammon*, 560 P.2d 1375, 1376 (Utah 1977). Indeed, "courts have substantial discretion in deciding whether to grant continuances, and their decision[s] will not be overturned unless that discretion has been clearly abused." *Brown v. Glover*, 2000 UT 89, ¶ 43, 16 P.3d 540 (citation and internal quotation marks omitted). Stated differently, a district court's denial of a motion to continue is an abuse of its discretion only if its decision is "clearly unreasonable and arbitrary." *Holbrook v. Master Prot. Corp.*, 883 P.2d 295, 299 (Utah Ct. App. 1994) (internal quotation marks omitted).

¶20    Trial in this case was initially scheduled for December 17, 2009, but on Husband's motion was continued until January 22, 2010. On January 6, Husband moved for another continuance, requesting for the first time in the course of the

proceedings that a custody evaluation be completed. The court granted the motion, and trial was rescheduled for March 17. On February 9, the court appointed a custody evaluator, but in its order it stated that "[t]he child custody evaluation shall be finalized by the date of trial in this matter, March 17." Notably, the trial court edited the order by striking out language that the parties make their "[b]est efforts" to complete the child custody evaluation before the trial, thus making completion of the evaluation by the trial date mandatory.[6]

¶21 On March 4, Husband moved for another continuance on the basis that the evaluation had not yet been completed. Accompanying Husband's motion was a letter from the evaluator, written on March 1, which explained that the evaluator had his first meeting with Husband and Wife that same day, and despite fast tracking the evaluation process and scheduling appointments during the month of March, he would not be able to complete the evaluation until the week of April 12. The letter also indicated that he had first been contacted on February 25--over two weeks after the trial court had ordered that the custody evaluation be completed by the date of trial. The court denied the motion for a continuance, ordering that the trial proceed as scheduled.

¶22 Husband has not shown that the district court abused its discretion in denying his motion to continue. Not only had Husband previously been granted two continuances, but in granting the second continuance, the court made it clear that the custody evaluation must be completed before the March 17 trial date. *See Hill v. Dickerson*, 839 P.2d 309, 311 (Utah Ct. App. 1992) (noting that the trial court's grant of a previous motion to continue "weigh[ed] heavily in favor of the court's decision" to deny a subsequent motion); *see also In re Estate of Thorley*, 579 P.2d 927, 929 (Utah 1978); *First Sec. Bank v. Johnson*, 540 P.2d 521, 521-22 (Utah 1975). Further, Husband requested the custody evaluation very late in the proceeding, only after the first trial date had been set and continued and a new date scheduled; and even then, the custody evaluator was not contacted until over two weeks after his appointment by the court. Under the circumstances, we cannot say that the district court's refusal to delay the trial any longer was either unreasonable or arbitrary. *Cf. Brown*, 2000 UT 89, ¶ 43 ("[A]n abuse of discretion may be found if a party has 'made timely objections, [has] given necessary

---

[6]Throughout the course of the proceedings, Husband substituted counsel four times.

notice, and has made a reasonable effort to have the trial date changed for good cause.'" (quoting *Griffiths*, 560 P.2d at 1376) (second alteration in original)).

## IV. Contempt and Attorney Fees

¶23   Husband challenges the district court's decision to hold him in contempt for violating a court order. He also challenges the amount of attorney fees the court awarded to Wife in connection with the contempt proceeding.

¶24   "[D]isobedience of any lawful judgment[ or] order . . . of the court" is a "contempt[] of the authority of the court." Utah Code Ann. § 78B-6-301(5) (2008). "As a general rule, in order to prove contempt for failure to comply with a court order it must be shown that the person cited for contempt knew what was required, had the ability to comply, and intentionally failed or refused to do so." *Von Hake v. Thomas*, 759 P.2d 1162, 1172 (Utah 1988), *superseded on other grounds as stated in State v. Hurst*, 821 P.2d 467, 469 (Utah Ct. App. 1991). "The decision to hold a p[erson] in contempt of court rests within the sound discretion of the trial court and will not be disturbed on appeal unless the trial court's action is so unreasonable as to be classified as capricious and arbitrary, or a clear abuse of discretion." *Anderson v. Thompson*, 2008 UT App 3, ¶ 11, 176 P.3d 464 (internal quotation marks omitted). Further, the person challenging the court's decision to hold someone in contempt must "'demonstrat[e] that, viewed in the light most favorable to the trial court, the evidence . . . was insufficient to support the'" court's decision. *Envirotech Corp. v. Callahan*, 872 P.2d 487, 498 (Utah Ct. App. 1994) (quoting *Utah Farm Prod. Credit Ass'n v. Labrum*, 762 P.2d 1070, 1075 (Utah 1988)).

¶25   At a hearing held on September 1, 2010, the court ordered that Husband return both of the parties' children to Wife on September 6, 2010, at 7:30 p.m. At that time, the parties' attorneys also arranged for Husband to pick up some of his personal property from Wife when he dropped off the children. Wife and her attorney were present at the hearing; Husband was not present but his attorney was, and his counsel actively engaged in arranging the time that Husband would return the children to Wife and pick up his property. On September 6, Husband returned their son to Wife but did not return their daughter. He then kept their daughter from September 6 to September 10, contrary to the court's order.

¶26   On Wife's motion, the district court issued an order to show cause based on Husband's failure to return their daughter to her on September 6. In a December 2010 order that followed a September 27, 2010 hearing on the order to show cause, the

district court held Husband in contempt for violating the court's order, concluding that Husband failed to return their daughter to Wife on September 6, 2010, and "improperly kept the[ir] . . . daughter for parent time to which he was not entitled from September 6 . . . until . . . September 10 . . . , a period of four days."[7]

¶27    On appeal, Husband asserts that "[t]here is no evidence [that he] intentionally or willfully refus[ed] to follow court orders in this case."  Husband testified that he did not know that he was supposed to return their daughter to Wife on September 6; instead, he thought that he was allowed to keep her throughout the week as part of his extended parent-time.  He complained that "this whole thing is confusing" and generally explained his failure to return their daughter to Wife due to his misunderstanding of the court's order for extended parent-time.  But Husband did not claim that his attorney, who was present and actively participated in making the arrangements regarding when Husband was to return both children to Wife, did not tell him about the court's order.  To the contrary, he testified that he understood that he was supposed to return their son to Wife at the time specified because their son was about to start school and his parent-time "couldn't interrupt that."  It is also apparent that Husband was aware that on September 6, he was supposed to pick up some of his personal property from Wife's house, another matter that counsel agreed to at the same hearing where Husband's return of the children was arranged.  In fact, at the hearing on the order to show cause, the court asked Husband's attorney, "Was it clear to you that the

---

[7]The court first entered a contempt order in October 2010.  That order, prepared by Wife's counsel, included as the basis for holding Husband in contempt the early September parent-time violation, as well as other instances where Husband had failed to comply with court orders, generally pertaining to his failure to pay for child care expenses.  On Husband's objection, the original order was stricken and the December 2010 order was entered in its stead, holding Husband in contempt only for the parent-time violation.  At the September 27 hearing on the order to show cause, however, when the district court entered its oral ruling, the court held Husband in contempt not only for his failure to return their daughter to Wife from September 6 through 10 but also for his failure to return their daughter to Wife from September 17 through 20.  Nonetheless, because the court's order holding Husband in contempt is limited to Husband's failure to return the daughter to Wife on September 6 through 10, we similarly limit our analysis.

[daughter] was supposed to be back on [September] 6th?" And she responded, "It was, your Honor."

¶28    "It is within the province of the trial court, as the finder of fact, to resolve issues of credibility." *Henshaw v. Henshaw*, 2012 UT App 56, ¶ 11, 271 P.3d 837 (mem.). "In so doing, the trial court is free to believe one person's testimony over the testimony of multiple others." *Id.* The evidence before the court, when viewed in the light most favorable to the court's decision, provides a sufficient basis for the court to have reasonably concluded that Husband's attorney had accurately conveyed to him and that he understood the court's order that he return both the parties' children to Wife on September 6, but intentionally violated it by returning only the son and not the daughter. Because there is sufficient evidence to support the court's decision to hold Husband in contempt, we will not disturb that decision on appeal.

¶29    Husband also challenges the district court's decision to award Wife attorney fees. "If an actual loss or injury to a party in an action . . . is caused by . . . contempt, the court . . . may order the person proceeded against to pay the party aggrieved a sum of money sufficient to indemnify him and to satisfy his costs and expenses." Utah Code Ann. § 78B-6-311 (2008). Damages incurred due to another's contemptuous conduct may include related attorney fees. *See Foreman v. Foreman*, 111 Utah 72, 176 P.2d 144, 151 (1946). While we see no reason to disturb the district court's decision to award attorney fees to Wife, we reverse and remand for recalculation of the amount because the attorney fees award appears to include fees for services outside the scope of the court's contempt finding.

¶30    Husband was held in contempt for conduct that occurred in early September 2010, with a final order being entered in December 2010. In deciding to hold Husband in contempt, the district court awarded Wife attorney fees for 16.05 hours, totaling $3,129.75. That award, however, included fees for hours Wife's attorney accrued in May, June, July, and August of 2010.

¶31    The court's oral decision entered on September 27 and its December 2010 order holding Husband in contempt specifies that it is based on conduct that occurred in September 2010, as do both Wife's motion and the resulting order to show cause. *See generally* Utah Code Ann. § 78B-6-311 (limiting compensation for an actual loss or injury due to another's contempt to "a sum of money sufficient to indemnify" the person damaged for "his costs and expenses"); *Gilbert Dev. Corp. v. Wardley Corp.*, 2010 UT App

361, ¶ 45, 246 P.3d 131 ("We grant the trial court significant discretion in determining what constitutes 'reasonable' attorney fees . . . ."). It appears that Wife's request for attorney fees, however, included not only fees for hours related to the early September 2010 conduct but also for hours related to Husband's earlier conduct that Wife's counsel included in the original order, entered in October 2010, to which Husband successfully objected. *See supra* ¶ 26 n.7. Because that October 2010 order was stricken and replaced with the December 2010 order, which held Husband in contempt only for the early September 2010 conduct, attorney fees should be commensurately limited. Accordingly, we reverse the court's award of attorney fees to Wife and remand for appropriate recalculation.

## V. Conclusion

¶32    In conclusion, the district court acted appropriately within its discretion in dividing the parties' assets and debts, awarding sole legal and physical custody of the children to Wife, denying Husband's motion for a continuance, and deciding to hold Husband in contempt. We therefore affirm but reverse and remand only for recalculation of the amount of attorney fees awarded to Wife for Husband's contemptuous conduct.

_____
Stephen L. Roth, Judge

-----

¶33    WE CONCUR:

_____
Gregory K. Orme, Judge

_____

Michele M. Christiansen, Judge