2015 UT App 244

# THE UTAH COURT OF APPEALS

DAVID VAUGHAN,
Appellee,
*v.*
EMILY ROMANDER,
Appellant.

Opinion
No. 20131091-CA
Filed September 17, 2015

Second District Court, Farmington Department
The Honorable Michael G. Allphin
No. 114701785

John M. Webster and Kenji J. Kawa, Attorneys
for Appellant

Cassie J. Medura and Jarrod H. Jennings, Attorneys
for Appellee

JUDGE MICHELE M. CHRISTIANSEN authored this Opinion, in
which JUDGES GREGORY K. ORME and JAMES Z. DAVIS concurred.
JUDGE GREGORY K. ORME authored a separate opinion in which
JUDGE JAMES Z. DAVIS concurred and from which JUDGE MICHELE
M. CHRISTIANSEN dissented, with opinion.[1]

CHRISTIANSEN, Judge:

¶1      This case involves a child-custody dispute between David
Vaughan (Father) and Emily Romander (Mother). Father filed a

---

1. Parts I, II, IV, and V of the lead opinion represent the majority
opinion. Part III of the lead opinion, addressing the parent-time
schedule, reflects the dissenting opinion of Judge Christiansen.
*See infra* ¶¶ 19–23. Judge Orme's separate opinion represents the
majority decision on that issue. *See infra* ¶¶ 29–31.

petition seeking custody of the child, child support, and other related relief. The case proceeded to trial, and the trial court awarded primary physical custody to Father and entered other orders relating to child support and Mother's parent-time. Mother challenges both the trial court's refusal to grant her request for a continuance on the first day of trial and various components of the trial court's ruling. We affirm.

## BACKGROUND

¶2    Father and Mother are the biological parents of a minor child. Father filed a petition seeking an adjudication of child custody, parent-time, and child support for the child. The trial court entered temporary orders awarding Mother primary physical custody of the child. As part of the proceedings, a child-custody evaluator (the Evaluator) conducted a custody evaluation from July 2012 to January 2013. At a settlement conference in February 2013, the Evaluator indicated that her recommendation would be for Mother to retain primary physical custody of the child. The parties were unable to reach a settlement, and the matter was set for trial.

¶3    In July 2013, the parties agreed that the Evaluator should update the custody evaluation. The parties stipulated that the Evaluator would complete and submit her final custody evaluation at least fourteen days before trial. The Evaluator submitted her final custody evaluation on September 5, 2013— exactly fourteen days before trial. This time, the Evaluator recommended that Father be awarded primary physical custody of the child. She recommended that Mother's parent-time consist of alternating weekends from Friday to Monday and a weekday overnight stay alternating between Monday and Thursday to minimize gaps in Mother's parent-time given the young age of the child.

¶4     Before trial, Mother moved to continue the trial, arguing that the timing of the Evaluator's final custody evaluation left her little or no time to respond. The trial court denied Mother's motion on the morning of trial.

¶5     After the trial, the court entered an order awarding primary physical custody to Father and establishing a parent-time schedule. The court awarded Mother parent-time on alternating weekends from Friday to Sunday and a weekday overnight stay every Tuesday. The trial court also ordered that the parties could each exercise a right of first refusal to provide parental child care rather than surrogate care for overnight periods and periods exceeding twenty-four hours. Mother appeals.

ISSUES AND STANDARDS OF REVIEW

¶6     Mother first argues that the trial court abused its discretion in denying her motion to continue the trial. We review a trial court's decision on a motion to continue for an abuse of discretion. *Clarke v. Clarke*, 2012 UT App 328, ¶ 19, 292 P.3d 76.

¶7     Mother next argues that the trial court erred in awarding primary physical custody to Father. "We review an award of physical custody for abuse of discretion." *Cagatay v. Erturk*, 2013 UT App 82, ¶ 2, 302 P.3d 137. We review the trial court's underlying factual findings for clear error. *Id.*

¶8     Mother also challenges the parent-time schedule established by the trial court. "The district court has the discretion to establish parent-time in the best interests of the children." *Tobler v. Tobler*, 2014 UT App 239, ¶ 24, 337 P.3d 296. Accordingly, we review the trial court's parent-time order for an abuse of that discretion. *See id.* ¶¶ 12, 24.

¶9 Last, Mother challenges the trial court's decision to limit the right of first refusal to provide child care in situations when the custodial parent requires surrogate care overnight. The trial court is given broad discretion in making child-custody awards, and we will not disturb the trial court's decision unless it is "so flagrantly unjust as to constitute an abuse of [that] discretion." *Marchand v. Marchand*, 2006 UT App 429, ¶ 4, 147 P.3d 538 (alteration in original) (citation and internal quotation marks omitted).

ANALYSIS

I. Motion to Continue

¶10 Mother first argues that the trial court abused its discretion in denying her motion to continue the trial. A trial court has substantial discretion in deciding whether to grant a continuance. *Clarke v. Clarke*, 2012 UT App 328, ¶ 19, 292 P.3d 76. We will conclude that a trial court has abused that discretion only if the decision to grant or deny a continuance is "clearly unreasonable and arbitrary." *Id.* (citation and internal quotation marks omitted).

¶11 At a telephone conference in June 2013, the parties agreed to continue the trial to further pursue settlement and to obtain an updated custody evaluation. The trial was then scheduled for September 19, 2013. In July 2013, the parties stipulated to an updated custody evaluation "to be completed and . . . submitted to the Court and the parties at least fourteen (14) days before trial." The Evaluator submitted the evaluation to the parties on September 5, 2013, exactly fourteen days before trial. Mother moved to continue the trial, arguing that she needed more time to respond to the Evaluator's final recommendation. The trial court denied Mother's motion to continue, ruling that "[t]he parties have had adequate opportunity to prepare for the trial," "the parties by way of stipulation agreed to allow the updated

custody evaluation," and the Evaluator "timely delivered the updated evaluation according to the parties' agreement."

¶12   Under these circumstances, we cannot conclude that the trial court abused its discretion in denying Mother's motion to continue. Mother stipulated to receipt of the final custody evaluation only fourteen days before trial. Nothing in the stipulation conditioned Mother's agreement on the Evaluator's recommendation remaining unchanged in her final custody evaluation. Moreover, the parties' stipulation was filed just over a week after Father had requested an updated custody evaluation on the basis of Father's concerns over Mother's "housing and employment stability," physical care of the child, and issues relating to Mother's suspended driver license. The trial court therefore could have reasonably concluded that Mother was on notice that the Evaluator's final custody recommendation might well change. The final custody evaluation was timely delivered within the terms of the parties' stipulation. Mother therefore received the exact amount of time to respond to the evaluation as she had previously agreed was appropriate. We see no abuse of discretion in the trial court's decision to hold Mother to the terms of the stipulation and in denying her motion to continue.

## II. Award of Primary Physical Custody

¶13   Next, Mother challenges the trial court's decision to award primary physical custody to Father. She contends that certain of the trial court's factual findings underpinning that determination are unsupported by the evidence. A trial court's factual findings are clearly erroneous "only if they are in conflict with the clear weight of the evidence, or if this court has a definite and firm conviction that a mistake has been made." *Kimball v. Kimball*, 2009 UT App 233, ¶ 14, 217 P.3d 733 (citation and internal quotation marks omitted).

¶14 First, Mother contends that the trial court clearly erred in finding that "in the past [Mother] has spent very little time engaging in one-on-one time with the minor child in play and learning." However, Mother has directed us to no evidence in the record to establish that the trial court's finding is against the clear weight of the evidence. The only evidence she has identified that is arguably relevant to this finding is her own testimony that, in the future, she would be able to work from home on a schedule that would allow her to spend more time with the child. But evidence that she will spend more time with the child in the future has no bearing on whether there is evidence, or a lack of evidence, demonstrating that she engaged in one-on-one time with the child in the past. And Mother has not addressed the evidence supporting the trial court's finding. "Logically, to show that a factual finding is against the clear weight of the evidence, an appellant must candidly recount all of the evidence supporting the finding and explain why it is outweighed by the competing evidence." *Reeve & Assocs., Inc. v. Tanner*, 2015 UT App 166, ¶ 34. Mother has therefore failed to meet her burden to demonstrate that the trial court's finding is clearly erroneous.

¶15 Second, Mother asserts that "[t]he trial court's concern with [Mother's] ability to support a relationship between [the child] and [Father] is not supported in fact." Mother appears to be challenging the trial court's observation that between the expiration of the temporary custody orders and trial, Mother had restricted Father's parent-time to the statutory minimum rather than the more generous parent-time allowed by the temporary orders and had otherwise shown an inability to be supportive of Father's relationship with the child. However, Mother identifies no evidence either in support of or in opposition to the trial court's findings that would aid our analysis. Instead, she directs us only to her testimony that while she did limit Father's visitation with the child once the temporary custody order had expired, she did so only upon the advice of her attorney. That

testimony, however, fails to demonstrate that the trial court's findings are clearly erroneous.

¶16    Third, Mother challenges the trial court's "concern over [Mother's] financial stability." Mother argues that the trial court "has overlooked [Mother's] recent actions in pursuing financial stability," but she identifies no record evidence from which we can evaluate her claim. Mother has therefore failed to demonstrate that the trial court's findings regarding her financial stability are clearly erroneous.

¶17    Last, Mother challenges the trial court's findings that the child had "no designated bedroom where he sleeps" and "few specific age appropriate toys and educational materials in [Mother's] home." Again, Mother directs us only to her own testimony that the child did have his own bed and "several toys." Mother does not address the Evaluator's testimony that "basic things like toys and [an] appropriate place to sleep weren't provided for [the child]" at Mother's house. The Evaluator testified that on two different visits to Mother's house, she did not see any age-appropriate toys for the child. She also testified that it did not appear that the child had a designated sleeping area and did not have his own bed or crib. When the Evaluator inquired, she received conflicting accounts from Mother and Mother's other children as to where the child slept. Mother has not explained how the trial court's findings lack evidentiary support in light of the Evaluator's testimony. She has therefore failed to demonstrate that the trial court's findings are clearly erroneous.

¶18    Mother has failed to meaningfully address the evidence supporting the trial court's findings or persuasively demonstrate that those findings are against the clear weight of the evidence. We are therefore not convinced that the trial court's findings are against the clear weight of the evidence, and we conclude that

the trial court did not abuse its discretion in awarding primary physical custody of the child to Father.

### III. Parent-Time Schedule[2]

¶19 Next, Mother argues that the parent-time schedule ordered by the trial court is not in the best interests of the child. "[T]he parent-time schedule as provided in [section 30-3-35.5] shall be presumed to be in the best interests of the child." Utah Code Ann. § 30-3-34(2) (LexisNexis 2013). This presumption can be rebutted only upon a showing by a parent that more or less parent-time should be awarded to the noncustodial parent. *Id.* Utah Code section 30-3-35.5(3)(e) governs parent-time for a child between eighteen months and three years old and provides for alternating weekends from Friday to Sunday and a weekday evening for three hours. The trial court ordered Mother's parent-time as alternating weekends from Friday to Sunday and Tuesdays from 4:00 p.m. until Wednesday morning at 10:00 a.m. The trial court's order therefore allowed Mother more parent-time than the statutory minimum.[3] *See id.*

¶20 Mother argues that the trial court erred in departing from the Evaluator's recommendation by not alternating her weekday parent-time between Monday and Thursday. Although a trial court is not bound to accept a custody evaluator's

---

2. As previously noted, this section of the lead opinion reflects the dissenting view of Judge Christiansen. The majority opinion on the issue presented in this section is contained in Judge Orme's separate opinion. *See infra* ¶¶ 29–31.

3. Per the trial court's order, Mother's weekend parent-time ends thirty minutes earlier on Sunday than provided by statute but begins two hours earlier on Friday. Additionally, Mother's weekday parent-time consists of an overnight, whereas the statute only provides for one three-hour weekday evening.

recommendation, "the court is expected to articulate some reason for rejecting that recommendation." *R.B. v. L.B.*, 2014 UT App 270, ¶ 18, 339 P.3d 137. Mother argues that the parent-time schedule adopted by the trial court will result in periods of separation from the child of up to seven days, which the Evaluator testified would be disruptive for the child. The trial court did not address this issue in rejecting the Evaluator's recommendation to alternate Mother's weekday parent-time. Rather, the trial court stated that it "declines to fully adopt [the Evaluator's] proposed schedule," and gave no explanation or reasoning to support its decision.

¶21 Without specific findings, I believe that this court cannot properly review the trial court's rejection of the Evaluator's recommendation. Although the trial court was not bound to accept the evaluation, the trial court indicated no reason for its departure from the Evaluator's proposed parent-time schedule. *See Tuckey v. Tuckey*, 649 P.2d 88, 90-91 (Utah 1982) (setting aside an order of custody and remanding the case for further findings to explain "some reason for rejecting [a social worker's] recommendation" where the trial court had failed to provide any explanation for dismissing the social worker's custody report).

¶22 I disagree with my colleagues' assertion that a remand for specific findings on this issue would merely result in the trial court declaring that "the predictability and scheduling ease presented by having a set weeknight outweighs the perceived benefits of alternating weeknights." *Infra* ¶ 30. I believe such reasoning fails to prioritize the welfare of the child over the desires of the parents and their schedules. *See Peterson v. Peterson*, 818 P.2d 1305, 1308 (Utah Ct. App. 1991). While the trial court has the discretion to establish parent-time, *see* Utah Code Ann. § 30-3-32(2)(a) (LexisNexis 2013), that award of parent-time *must* be in the best interests of the child, *Tobler v. Tobler*, 2014 UT App 239, ¶ 24, 337 P.3d 296. Indeed, as this court has noted, it is an "'overarching principle'" that we should never lose sight of

the best interests of the child. *R.B.*, 2014 UT App 270, ¶ 17 (quoting *Elmer v. Elmer*, 776 P.2d 599, 604 (Utah 1989)).

¶23 I conclude that, given the Evaluator's reasoned explanation for why alternating Mother's weekday parent-time is in this young child's best interests, the trial court abused its discretion by rejecting that recommendation without articulating some basis for its decision. *See Tuckey*, 649 P.2d at 90–91. I would therefore vacate the trial court's parent-time order and direct the trial court to enter a new parent-time order supported by findings demonstrating that the parent-time schedule is in the child's best interests.

## IV. Right of First Refusal

¶24 Finally, Mother challenges the trial court's decision to limit the parties' right of first refusal to provide child care to situations when the child would require surrogate care overnight.[4] Mother argues that the limitation on the right of first

---

4. Mother contends that the trial court limited her right of first refusal to periods longer than twenty-four hours. This does not appear to be an accurate reading of the trial court's order. The trial court stated,

> The Court adopts the recommendation of [the Evaluator] on this issue in that this right should not extend to either party unless the parent requiring child care needs such care overnight. In the event a parent needs childcare for longer than 24 hours, then the other parent should be notified and have the right of first refusal to provide such care before surrogate third party care is required.

Thus, the trial court's order unambiguously states that it adopts the Evaluator's recommendation of an "overnight" trigger for the right of first refusal. We read the balance of the court's ruling

(continued…)

refusal "has effectively taken away the opportunity for [Mother] to provide care for her children" and thereby "contradict[ed] a clear presumption under Utah law."

¶25 Our legislature has enacted a number of advisory guidelines that are "suggested to govern all parent-time arrangements between parents." Utah Code Ann. § 30-3-33 (LexisNexis 2013). One such guideline states, "Parental care shall be presumed to be better care for the child than surrogate care and the court shall encourage the parties to cooperate in allowing the noncustodial parent, if willing and able to transport the children, to provide the child care. Child care arrangements existing during the marriage are preferred as are child care arrangements with nominal or no charge." *Id.* § 30-3-33(15). Yet, while this statute favors parental care, "[t]he statute's plain language does not entitle the willing and able noncustodial parent to provide day care. It merely suggests that the trial court encourage such an arrangement based on the presumption that parental care is better." *Wight v. Wight*, 2011 UT App 424, ¶ 22, 268 P.3d 861 (alteration in original) (citation and internal quotation marks omitted). Because Mother is not entitled to a right of first refusal, it would have been within the trial court's discretion to have declined to order any right of first refusal at all. Additionally, the court adopted the Evaluator's recommendation regarding the right of first refusal based on her testimony that Mother's relocation increased the travel time between the parties. The court found that given both parties' work schedules and the distance between their residences, "it is not practical for either party to be able to assist the other with child care." Based on this, we do not agree that the trial court

---

(…continued)

on this issue as an additional and separate ruling that the right would also apply when a party is unable to provide care for periods longer than twenty-four hours.

exceeded its considerable discretion in limiting the right of first refusal to those times when the child would require surrogate care overnight.

¶26 Mother also appears to argue that the trial court's selection of an overnight absence to trigger the right of first refusal is arbitrary or unreasonable. She contends that "[t]here appears to be little or no reason that the trial court has effectively eliminated [Mother's] right of first refusal." The Evaluator recommended allowing a right of first refusal only for overnight absences, and testified that a right of first refusal for "smaller blocks of time ends up being a point of conflict and the parties become overly monitoring of one another." Thus, there appears to be an evidentiary basis for the trial court's decision to limit the right of first refusal to times when the child would need surrogate care overnight. We therefore conclude that the trial court did not abuse its discretion in ordering the right of first refusal to extend only to overnight absences.

V. Attorney Fees on Appeal

¶27 Father requests an award of his attorney fees incurred on appeal, asserting that Mother's appeal "has no basis in fact or law" and is therefore frivolous. We may award "just damages," which can include an award of attorney fees, if we conclude that an appeal is frivolous. Utah R. App. P. 33(a). A frivolous appeal is "one that is not grounded in fact, not warranted by existing law, or not based on a good faith argument to extend, modify, or reverse existing law." *Id.* R. 33(b). "[T]he imposition of such a sanction is a serious matter and only to be used in egregious cases, lest the threat of such sanctions should chill litigants' rights to appeal lower court decisions." *Redd v. Hill*, 2013 UT 35, ¶ 28, 304 P.3d 861. Egregious cases may include those appeals which are "obviously without merit, with no reasonable likelihood of success, and which result in the delay of a proper judgment." *Id.* (citation and internal quotation marks omitted).

Father has not demonstrated that this is an egregious case, particularly where our decision in this case includes a dissenting opinion in Mother's favor on the parent-time issue. We therefore deny Father's request for attorney fees.

CONCLUSION

¶28    The trial court did not abuse its discretion in denying Mother's motion to continue the trial. Mother has failed to demonstrate that the factual findings underlying the trial court's award of primary physical custody to Father are clearly erroneous. And the trial court did not abuse its discretion in limiting the parties' right of first refusal to provide child care to periods of overnight absence. We therefore affirm.

———————

ORME, Judge (concurring and writing for the majority in part):

¶29    Judge Davis and I concur in the lead opinion, except for Part III. We disagree with Judge Christiansen that remand is in order to more precisely learn the trial court's rationale in selecting the particular weekday when Mother would have parent–time with the child. This is, in context, an exceedingly minor point. And the trial court's rationale for deviating from the Evaluator's recommendation is obvious. A remand for the trial court to state the obvious is not, in our view, a good use of judicial resources or, for that matter, the parties' resources.

¶30    In our view, the trial court did not substantially deviate from the Evaluator's recommendation, which was for Mother to have one weeknight as well as alternating weekends. She got her one weeknight, although not the alternating one recommended by the Evaluator. Clearly the trial court thought it was more sensible to just have a fixed weeknight—Tuesday—rather than to jump back and forth between Monday and Thursday. If we

remand for a specific finding, the trial court will just say—and reasonably so—that it finds that the predictability and scheduling ease presented by having a set weeknight outweighs the perceived benefits of alternating weeknights.

¶31    With all due respect to our colleague, this hypertechnical fine tuning in the trial court's analysis is not worth the burden of remand, especially where its rationale is so intuitive. Thus, the court's judgment is to affirm the trial court's order in its entirety.

―――――――