2016 UT App 55

# THE UTAH COURT OF APPEALS

RACHAEL ROBERTSON,
Appellee,
*v.*
JOSHUA M. ROBERTSON,
Appellant.

Memorandum Decision
No. 20140807-CA
Filed March 24, 2016

Second District Court, Ogden Department
The Honorable Noel S. Hyde
No. 124900490

John M. Webster and Kenji Kawa, Attorneys
for Appellant

Rachael Robertson, Appellee Pro Se

SENIOR JUDGE RUSSELL W. BENCH authored this Memorandum
Decision, in which JUDGES J. FREDERIC VOROS JR. and STEPHEN L.
ROTH concurred.[1]

BENCH, Senior Judge:

¶1      Joshua M. Robertson challenges the trial court's ruling in
favor of his ex-wife, Rachael Linares (fka Robertson),
determining that it was in the children's best interests to relocate
to Colorado with Linares. We affirm.[2]

---

1. Senior Judge Russell W. Bench sat by special assignment as
authorized by law. *See generally* Utah R. Jud. Admin. 11-201(6).

2. Linares's pro se brief fails to provide any citation to the record
and appears to rely on a number of facts not in the record. *See*
Utah R. App. P. 24(a)(7) ("All statements of fact and references to

(continued…)

I. Motion to Continue

¶2     Robertson first argues that the trial court abused its discretion by denying his motion to continue the trial. "We review a trial court's decision on a motion to continue for an abuse of discretion," *Vaughan v. Romander*, 2015 UT App 244, ¶ 6, 360 P.3d 761, and "will conclude that a trial court has abused [its] discretion only if the decision to grant or deny a continuance is clearly unreasonable and arbitrary," *id.* ¶ 10 (citation and internal quotation marks omitted).

¶3     Robertson asserts that a continuance was necessary to allow the relocation evaluator to examine the physical living arrangements of the new home Linares and her new husband had moved into. The trial court recognized that the physical living arrangements were relevant to its analysis but determined that a continuance was unnecessary given that "substantial additional factors" were relevant to the analysis, that there were witnesses who could "testify . . . and provide direct response to any questions" regarding the new living arrangements, and that it was "in the interest of all parties that this matter be addressed and resolved as timely as possible." This decision was not unreasonable or arbitrary. The trial court clearly articulated valid reasons for denying the motion, and we are not convinced that giving the evaluator a chance to review the new living arrangements would have affected the outcome of the case. The possibility that a continuance would have allowed Robertson to rebut evidence indicating that the new home was an

_____

(…continued)

the proceedings below shall be supported by citations to the record in accordance with paragraph (e) of this rule."). To the extent that Linares relies on "facts not properly cited to, or supported by, the record," we do not consider them in our analysis. *See Uckerman v. Lincoln Nat'l Life Ins. Co.*, 588 P.2d 142, 144 (Utah 1978).

improvement on the old one was speculative at best. Furthermore, given that this factor was only one of many the trial court considered, we are not convinced that the trial court would have reached a different conclusion even if it had found that the physical living arrangements factor weighed in Robertson's favor. *See infra* ¶ 8.

## II. Custody Determination

¶4     Robertson next challenges the trial court's determination that relocation was in the children's best interests. *See Pingree v. Pingree*, 2015 UT App 302, ¶ 7, 365 P.3d 713 ("In all custody determinations, the district court's primary focus must be on the best interests of the child." (citation and internal quotation marks omitted)), *petition for cert. filed*, Feb. 16, 2016 (No. 20160101). The trial court considered a number of factors relevant to this determination. The court found that both parents had an equal bond with the children and that this factor did not weigh in favor of either party. The court found that factors concerning the moral standards of the parties, their ability to encourage the children's relationship with a non-custodial parent, the children's physical living arrangements, the parents' ability to provide personal rather than surrogate care, and which party had historically been the children's primary caretaker weighed in favor of relocation. The court found that extended family relationships and community ties in Utah weighed against relocation. The court did not consider the event of relocation itself to be a substantial factor, observing that the children had previously relocated within Utah and had demonstrated an ability to adapt to such changes, and indicated that it believed "the relationships and arrangements" it had considered were "more significant." Based on these findings, the trial court concluded that relocation was in the children's best interests.

A.     Factual Findings

¶5     Robertson challenges the trial court's findings regarding the parties' moral standards, their ability to encourage the children's relationship with the other parent, and the physical living arrangements. "We will not disturb a trial court's findings of fact unless they are clearly erroneous," that is, unless "they are in conflict with the clear weight of the evidence, or . . . this court has a definite and firm conviction that a mistake has been made." *Brown v. Babbitt*, 2015 UT App 161, ¶ 5, 353 P.3d 1262 (citation and internal quotation marks omitted).

¶6     Robertson argues that the trial court should not have determined that Linares had higher moral standards than he did based upon the fact that she and her husband were married while Robertson was cohabitating with his girlfriend. Robertson asserts that the "significant shift in culture" that has taken place over the past thirty years means that his decision to cohabitate rather than marry should not reflect negatively upon his moral standards. "'Moral standards' are a statutory consideration, and may be relevant to a custody determination to the extent they affect the children's best interests." *Roberts v. Roberts*, 835 P.2d 193, 197 (Utah Ct. App. 1992) (citing Utah Code Ann. § 30-3-10 (1989) (current version at *id.* (LexisNexis Supp. 2015))). *Compare, e.g.*, *Hudema v. Carpenter*, 1999 UT App 290, ¶ 35, 989 P.2d 491 (holding that the trial court erred in determining that the moral standards factor weighed against a mother who cohabitated with her fiancé for six weeks prior to their wedding where there was no "evidence indicating[] that this short period of cohabitation had any negative impact on [her child's] welfare"), *with Thomas v. Thomas*, 1999 UT App 239, ¶¶ 10–11, 987 P.2d 603 (holding that the trial court did not exceed its discretion in relying on the moral standards factor in awarding custody to a father where it found that the mother's extramarital relationship had negatively impacted her parenting). In concluding that the moral standards factor weighed in favor of Linares, the trial court explained that marriage is more stable than cohabitation. We agree with the

trial court that the stability of a parent's romantic relationships affects the children's best interests, and the court considered the circumstances of the parties in assessing this factor, which it considered to weigh only "slightly in favor of the mother." Thus, the trial court's determination that this factor weighed in favor of relocation is not clearly erroneous.

¶7    Robertson next asserts that the trial court erred in finding that Linares was better able to encourage the children's relationship with a noncustodial parent. The trial court found that both parties had historically "demonstrated adequate capacity to be accommodating to one another's needs" and that their "communications and interaction . . . [had] been remarkably civil and positive as it relates to accommodations in the best interest of the children." Nevertheless, the trial court ultimately determined that Linares was slightly more likely to "encourage continuing contact with a non-custodial parent" because she had repeatedly requested that Robertson engage with her in "an open ended discussion" about her desire to relocate, while, "for the most part," Robertson's "reaction to those requests was an adamant refusal to consider such discussions." Because Robertson had flatly refused to discuss the relocation issue with Linares, the trial court determined that Linares had "a slightly greater ability . . . to be accommodating to the needs of" Robertson. To the extent that Linares's initial refusal to provide Robertson with the address of her new home or information about her fiancé appeared antagonistic, the trial court found that her actions were naïve rather than vindictive and that she ultimately did provide the requested information. Robertson's challenge to this finding merely reargues the evidence but does not demonstrate that the trial court's finding was against the clear weight of the evidence. *See Brown*, 2015 UT App 161, ¶ 5.

¶8    Finally, Robertson challenges the trial court's determination that the physical living arrangements factor weighed slightly in favor of Linares because "the Court [had]

more specific information about the location and residence in Colorado" than Robertson's residence in Utah. In evaluating this factor, the trial court seemed to focus more on whether the residence in Colorado was adequate than whether it was better than the residence in Utah. *Cf. Woodward v. LaFranca*, 2013 UT App 147, ¶ 28, 305 P.3d 181 (explaining that the trial court erred by finding that the emotional stability factor weighed in favor of the mother where it found that the mother was emotionally stable but not that she was more emotionally stable than the father). For example, the court acknowledged general testimony indicating that schools and access to medical care were better in Utah than in Colorado but rejected that testimony because there was no specific evidence indicating that the schools and medical care in Colorado were "inadequate or substandard or would subject the children to any risk of any kind." Further, Robertson testified that in his house, four children would be sharing three bedrooms, whereas Linares's husband indicated that in his new house, seven children would be sharing three bedrooms. Thus, the evidence does suggest that the children would have had more space in Robertson's home than in Linares's. But we are not prepared to say, in light of the limited and generalized evidence before the trial court regarding Robertson's home, that the trial court's finding was against the clear weight of the evidence. And even if we were ultimately to agree with Robertson that this finding was clearly erroneous, the district court concluded that this factor weighed only "slightly" in favor of Linares, and the other factors weighing in favor of relocation were ultimately sufficient to support the trial court's determination that relocation was in the children's best interests.

B.    Best Interests

¶9    Robertson asserts that the trial court exceeded its discretion in determining that relocation was in the children's best interests because although "several factors . . . slightly support relocation[,] . . . the majority of the factors all weigh against a relocation." "We review the district court's . . . custody

determinations for an abuse of discretion." *Pingree v. Pingree*, 2015 UT App 302, ¶ 6, 365 P.3d 713, *petition for cert. filed*, Feb. 16, 2016 (No. 20160101).

¶10    Even assuming that the trial court should have found the physical living arrangements factor to weigh against relocation, the remaining factors support the trial court's determination that relocation was in the children's best interests, particularly in light of the weight the court assigned to the primary caretaker factor. Robertson attempts to downplay the significance of the factors the court found in favor of relocation and to emphasize the factors weighing against relocation. For example, he asserts that the trial court overstated the significance of the primary caretaker and surrogate care factors because, in practice, he had exercised more parent time than he was awarded in the parties' decree of divorce[3] and because he would be able to provide personal care for the children for all but three days per week.[4] But he ultimately does not contest the trial court's determination that these factors weighed in favor of relocation, and as discussed above, the findings he does contest are not clearly erroneous.

---

3. Although the parties' divorce decree awarded Robertson every Tuesday and Wednesday and every other Thursday, the parties mutually agreed for Robertson to have the children every Tuesday, Wednesday, and Thursday. But even under the modified arrangement, Linares had four days per week with the children compared to Robertson's three days.

4. The trial court found that Linares would be available to care for the children full time and that even though Robertson worked only three days per week, his "work requires him to be out of the home during the weekend period which may be the primary time that the children are available and will need care."

¶11 "Although the court considers many factors, each is not on equal footing. Generally, it is within the trial court's discretion to determine, based on the facts before it . . . , where a particular factor falls within the spectrum of relative importance and to accord each factor its appropriate weight." *Hudema v. Carpenter*, 1999 UT App 290, ¶ 26, 989 P.2d 491; *see also Sukin v. Sukin*, 842 P.2d 922, 924 (Utah Ct. App. 1992) ("There is no definitive checklist of factors to be used for determining custody since such factors are highly personal and individual, and do not lend themselves to the means of generalization employed in other areas of the law . . . ." (omission in original) (citation and internal quotation marks omitted)). In this case, the trial court determined that it was appropriate to give the primary caretaker factor "more weight than any of the other individual factors in this case," acknowledging the evaluator's focus on that issue in reaching his ultimate recommendation in favor of relocation and his opinion that there was "greater risk associated with the . . . children not living primarily with their mother" than the risk associated with relocation. Further, the court found that additional factors supported relocation and that those factors ultimately outweighed the factors weighing against relocation.

¶12 As the trial court observed, this was "an extremely difficult decision in a difficult circumstance" because "both parents in this case have established a strong bond and relationship with their children," "[b]oth care deeply for the welfare and concern of their children," and "both have demonstrated that concern through their actions." *Cf. Hudema*, 1999 UT App 290, ¶ 38 (reviewing a trial court's custody determination in an "admittedly close case in which the court had to choose between two good parents"). Indeed, "the determination of custody may frequently and of necessity require a choice between good and better." *Tucker v. Tucker*, 910 P.2d 1209, 1214 (Utah 1996) (citation and internal quotation marks omitted). In such cases, we will generally "defer to the trial court's broad discretion." *Hudema*, 1999 UT App 290, ¶ 38.

Having reviewed the trial court's findings and its careful consideration of the relevant custody factors in this case, we are not convinced that the trial court exceeded its discretion in determining that relocation was in the children's best interests.

### III. Relocation Statute

¶13　Finally, Robertson argues that the trial court erred in determining that the relocation statute did not require the relocation notice to include information about where and with whom the parent is relocating.[5] "The trial court's interpretation of a statute is a question of law that we review for correctness." *Cox v. Cox*, 2012 UT App 225, ¶ 10, 285 P.3d 791.

¶14　Utah's relocation statute provides that a parent intending to move "150 miles or more from the residence of the other parent" "shall provide 60 days advance written notice of the intended relocation to the other parent." Utah Code Ann. § 30-3-37(1)–(2) (LexisNexis Supp. 2015). The statute includes no explicit requirement that the relocating parent inform the other of additional details regarding the relocation, such as the relocating parent's new address or the identity of the person with whom the parent is relocating. *See id.* And we can see no basis for reading such a requirement into the statute. This is not to say that it would not be appropriate for a relocating parent to provide such information or even for a court to order that such information be provided. Indeed, it would generally be expected that two people attempting to co-parent their children would need to have one another's addresses and other contact

---

5. Robertson alternatively suggests that if the trial court did correctly interpret the relocation statute, then the statute is unconstitutionally vague. This argument is unpreserved and inadequately briefed, and we therefore decline to consider it further. *See 438 Main St. v. Easy Heat, Inc.*, 2004 UT 72, ¶ 51, 99 P.3d 801; *State v. Thomas*, 961 P.2d 299, 304–05 (Utah 1998).

information. However, the statute does not require that such information be included in the relocation notice itself, and in fact, there may be circumstances where it would be reasonable for a relocating parent to withhold such information, e.g., where the relocating parent is the subject of a protective order against the other parent or there has been a history of serious conflict between the parents. In any event, Robertson does not explain how Linares's failure to include her address and the name of her new husband in her initial relocation notice affected the outcome of the case. And as Robertson ultimately obtained this information prior to the evidentiary hearing, we fail to see how he was prejudiced by any alleged deficiency in the notice.

## IV. Conclusion

¶15    We conclude that the trial court did not exceed its discretion in denying Robertson's motion for a continuance or in determining that relocation was in the children's best interests. Further, we conclude that a relocating parent is not statutorily required to provide the other parent with specific information regarding the details of her relocation. Accordingly, we affirm.

——————