**2022 UT App 13**

# THE UTAH COURT OF APPEALS

BRADLEY HINDS,
Appellee,
*v.*
RACHEL HINDS-HOLM,
Appellant.

Opinion
No. 20200586-CA
Filed January 27, 2022

Third District Court, Salt Lake Department
The Honorable James T. Blanch
No. 174905091

Theodore R. Weckel, Attorney for Appellant

Jonathan G. Winn, Attorney for Appellee

JUDGE DAVID N. MORTENSEN authored this Opinion, in which
JUDGES GREGORY K. ORME and RYAN D. TENNEY concurred.

MORTENSEN, Judge:

¶1 Bradley Hinds (Father) and Rachel Hinds-Holm (Mother) married and had a son (Child). After the parties divorced, the district court awarded custody of Child to Father. Mother challenges the court's discretion in weighing the statutory custody factors and the court's denial of her motion to continue the trial. We affirm.

### BACKGROUND[1]

¶2 Father and Mother married in May 2015. Within a few weeks of the wedding, they experienced marital difficulties, and Mother left the family home. But after discovering Mother was pregnant, the parties reconciled, and Child was born in February 2016.

¶3 Father, who was in the military, was transferred to New Mexico, where Mother and Child joined him. For a period of about fifteen months, Mother and Father shared the parental duties of raising Child. However, Father contended that Mother interfered in his relationship with Child by not including him in medical decisions, not supporting his family's relationship with Child, and giving contact with her mother (Grandmother) priority over his involvement with Child.

¶4 In June 2017, Father reported an incident of domestic violence. Father alleged "that he was physically assaulted by [Mother] and [Grandmother] resulting in a bruise on his arm, that he called the police, that base personnel intervened, and that the incident was investigated as domestic violence perpetrated by [Mother]." Mother claimed that "she was yelled at and verbally abused by [Father] during that episode." While the report from the military labeled Mother as the perpetrator, it determined that the incident "did not meet the criteria for physical maltreatment and entry into" the military's database. (Cleaned up.)

---

1. "On appeal from a bench trial, we view the evidence in a light most favorable to the district court's findings, and therefore recite the facts consistent with that standard." *Nebeker v. Orton*, 2019 UT App 23, n.1, 438 P.3d 1053 (cleaned up).

¶5     Mother then left New Mexico with Child to live with Grandmother in Utah. Thereafter, Father had difficulty reaching Mother and was unable to have contact with Child until September 2017, shortly after he filed for divorce in Salt Lake City, Utah. Under a temporary custody agreement reached by the parties and approved by the court, Mother was awarded sole physical custody, and the parties shared joint legal custody. Pursuant to this arrangement, "[t]he parties were ordered to cooperate with each other in terms of making decisions about the minor child, his health care, his education, and other decisions relating to the parties' joint exercise of legal custody."

¶6     However, on at least two occasions, Mother "declined to follow either something she and [Father] agreed to or something she was ordered to do by" the court commissioner. In December 2017, Father filed for an order to show cause in which he raised multiple issues regarding payment of certain expenses and Mother's failure to follow court orders about joint custody arrangements.

¶7     In early April 2018, the parties attended mediation but were unable to reach an agreement. About a week later, Mother's first attorney withdrew "as a result of [Mother's] conduct that appear[ed] to be in bad faith."

¶8     Mother hired a second attorney, and the parties attended a hearing on Father's first motion for an order to show cause in May 2018. The court commissioner ruled in Father's favor, ordering Mother to, among other things, involve Father in daycare and medical decisions regarding Child and to follow parent-time orders.

¶9     In September 2018, the commissioner ruled in Father's favor on a second motion for an order to show cause, which also concerned matters of parent-time and shared expenses. In that order, the commissioner warned Mother about the consequences of future violations: "The Court admonishes [Mother] that if a

third Order to Show Cause is raised before the Court for her inability to facilitate [Father's] ordered parent-time, the Court will sentence [Mother] to five days of jail for every count of contempt for parent-time which is missed." The commissioner also ordered Mother to respond to all discovery requests.

¶10 In September 2018, Mother's second attorney withdrew as counsel. That attorney stated that she was "incredibly frustrated" with Mother and Mother was "acting in bad faith."

¶11 Later that month, the court ordered that a custody evaluation be conducted by a licensed clinical social worker (Evaluator). The court ordered the parties to "cooperate as reasonably requested by" Evaluator, including participating in appointments and "[s]ubmission of any documents, names of collateral contacts, and other pertinent material for review during the first month of the evaluation process." Mother did not comply with the evaluation order. Specifically, she (1) did not timely return the completed evaluation agreement; (2) did not timely provide the initial parenting questionnaire; (3) did not fully complete the parenting questionnaire when she did return it; (4) was dismissive concerning the information requested by Evaluator; (5) provided no helpful information by merely answering "yes" or "no" to Evaluator's questions or by telling Evaluator, "Ask [Father], this is [Father's] responsibility not mine"; (6) was slow in providing information; and (7) failed to provide Evaluator all the information requested.

¶12 In December 2018, Mother hired a third attorney for the limited purpose of "settling and preparing the final documents."

¶13 In May 2019, as relevant here, the commissioner certified for trial the determination of physical custody, legal custody, and parent-time. The commissioner also heard Mother's request to reopen discovery to appoint a rebuttal expert to Evaluator, but the commissioner "declined to rule on it and reserved the issue to be raised by [Mother] before" the judge. Moreover, the

commissioner ordered Mother to "complete the outstanding discovery requests," as the commissioner had ordered in September 2018, and "provide her responses" to Father within twenty-one days. Subsequently, the parties agreed to proceed by informal trial, *see* Utah R. Jud. Admin. 4-904, and the matter was referred back to the commissioner. A trial was scheduled for September 4, 2019.

¶14 In August 2019, Father filed a third motion for an order to show cause, alleging that Mother was not observing ordered parent-time and had failed to include Father in medical decisions. On August 28, Mother requested that the trial be continued, which the commissioner granted, resulting in a new trial date of November 5. In early September, Mother informed the commissioner that she no longer agreed to the informal trial, and the commissioner recommended that the parties contact the district court for a trial date. Mother's third attorney withdrew in January 2020.

¶15 After the court scheduled a trial for March 9, Mother hired a fourth attorney on February 11. But he moved for permission to withdraw just fifteen days later, stating, "This withdrawal is done at the request of [Mother], her having knowledge of pending trial date on March 9, 2020. There has been a complete breakdown of attorney-client relationship which makes it impossible for counsel to be provided. [Mother] has indicated that she is planning to represent herself Pro Se at trial." On February 27, the court entered an order granting the motion, stating that the pending trial of March 9 would not be continued.

¶16 On the morning of trial, Mother, proceeding pro se, informed the court that she had filed a motion to continue on February 26 but that the court clerks informed her that the motion had never been received. She then made an oral motion to continue so that she could retain counsel. The judge noted that

Mother's fourth attorney "represented . . . that [Mother] wanted him to withdraw, that it was at [Mother's] request that he was withdrawing, . . . that [Mother] understood that the trial would not be continued, and that [Mother] understood that [she] would be representing [herself] at the trial." Mother responded that when she asked him to withdraw, she thought she would still "be able to have [someone] that would be able to advocate and be there for" her. The court denied the motion.

¶17 At trial, as a threshold matter, the parties agreed that a joint custody arrangement "was not feasible" or in Child's best interest. Thus, Mother and Father differed only as to which of them should receive sole legal and physical custody. Because the parties lived more than 1,000 miles apart and had an acrimonious relationship, the court determined that joint custody was, indeed, not feasible.

¶18 The court heard testimony from Father, Mother, and Evaluator. Evaluator provided extensive testimony concerning the best interest of Child in light of the statutory factors. Evaluator opined it was in Child's best interest for Father to be awarded sole legal and physical custody of Child, with Mother receiving parent-time.

¶19 The court was "persuaded" (1) that Evaluator "did a thorough and careful evaluation that included an appropriate analysis of all the pertinent factors" and (2) "by a preponderance of the evidence that [Evaluator's] expert opinions [were] in the best interests of the minor child in this case."

¶20 In reaching the conclusion that it was in Child's best interest that Father be awarded sole legal and physical custody, the court noted that it had not "delegate[d] decision-making responsibility" to Evaluator but had conducted "an independent analysis on the custody factors" set forth in Utah Code section 30-3-10(2) and applied "the evidence presented at trial" to arrive

at a determination of Child's best interest. The court then proceeded to address the custody factors.

¶21 The court found the following factors weighed in favor of Father:

- Domestic violence, *see* Utah Code Ann. § 30-3-10(2)(a) (LexisNexis 2019): Despite the evidence being in dispute, the court determined that this factor weighed in favor of Father based on Father's resulting injury, military documents listing Mother as the perpetrator, and Evaluator's investigation into the incident.

- Developmental needs of Child, *see id.* § 30-3-10(2)(b): Even though both parties unquestionably loved Child, the court reasoned that this factor weighed in favor of Father because evidence was presented that Mother was "not interested in [Child] having an emotional father-son attachment to [Father], and to [the] contrary [had] taken steps to prevent or interfere with such an attachment." The court noted that there was no evidence that Father "would interfere" with Child's relationship with Mother. The court concluded that it was "manifestly in [Child's] best interests to have an emotional bond and supportive parent-child relationship with both parents" and that goal was more likely to be achieved if custody was awarded to Father than if it was awarded to Mother.

- Parent's capacity and willingness to function as a parent, *see id.* § 30-3-10(2)(c): Overall, this factor weighed "very strongly" in favor of Father. The court agreed with Evaluator that if Father "were awarded sole custody, he would cooperate better in terms of facilitating parent-time with [Mother] than she would in facilitating parent-time with him." The court also found that there had "been a frustrating pattern throughout the pendency of this action

of [Mother] agreeing to do things, or being ordered to do things, and then almost immediately refusing to follow through with agreements she made or Court orders she was given."

- Wishes and concerns of Child, *see id.* § 30-3-10(2)(p): While Mother tried to portray in her testimony that Child did not like Father, the court expressed concern that any dislike Child had toward Father was "the product of [Mother] instilling negative feelings in the mind of [Child] against [Father]." And given the court's impression that Mother was attempting to manipulate Child, it found that this factor militated in favor of Father.

- Any other relevant factor, *see id.* § 30-3-10(2)(r): This factor tilted to Father, the court concluded, because if Father was "awarded sole legal and physical custody, he [would] likely cooperate to the extent necessary to ensure that [Mother had a] bond and relationship with [Child]." "But based on [Mother's] pattern of behavior throughout this action," the court found it was "more likely than not that if sole legal and physical custody were to be awarded to [Mother], she would not cooperate to support the parent-child relationship and bond between [Father] and [Child]." And because it was "in [Child's] best interest to have a bond with both parents, and since joint custody [was] not feasible," the court found that the best way to ensure Child's best interests were protected was "by awarding [Father] sole legal and physical custody with [Mother] to enjoy parent-time."

¶22    The court found the following factors weighed in favor of Mother:

- Child's interaction and relationship with extended family, *see id.* § 30-3-10(2)(*l*): This factor weighed in favor of

Mother because Child had a "strong relationship" with Grandmother.

- Parent who has been the primary caretaker, *see id.* § 30-3-10(2)(m): This factor weighed in favor of Mother because she had primary custody during temporary orders.

- Child's bond with parent, *see id.* § 30-3-10(2)(q): "This factor [did] not strongly militate for or against either parent" but "[t]o the extent that [Mother had] been the primary caretaker under the temporary orders, this factor would likely militate in her favor."

¶23    The court concluded these factors favored neither party:

- Past conduct and moral character of the parent, *see id.* § 30-3-10(2)(d): The court noted that while evidence of Mother's prior criminal convictions was presented, those convictions had, according to Mother, been expunged, and Father had presented no evidence to the contrary. Stating that it would not consider expunged charges, the court determined this factor weighed in neither party's favor.

- Relinquishment of custody or parent-time, *see id.* § 30-3-10(2)(h).

- Duration and depth of desire for custody or parent-time, *see id.* § 30-3-10(2)(i).

- Religious compatibility with Child, *see id.* § 30-3-10(2)(j).

- Parent's financial responsibility, *see id.* § 30-3-10(2)(k).

- Happiness of Child in previous parenting arrangements, *see id.* § 30-3-10(2)(n).

¶24 After weighing these factors, the court entered the divorce decree, awarding Father sole legal and physical custody and Mother parent-time as set forth by Utah Code section 30-3-37(6).

¶25 Two days after the trial, Mother's fifth attorney entered a limited appearance to assist Mother with filing a rule 52 motion[2] to amend the findings of fact and conclusions of law and a rule 59 motion[3] for a new trial. The court denied both motions, ruling Mother raised nothing in them "that she could not have raised earlier" and that they were "impermissible motions to reconsider" lacking "substantive merit." Mother appeals.

ISSUES AND STANDARDS OF REVIEW

¶26 Mother asserts that the district court erred in applying the statutory custody factors and Utah case law when it found that it was in the best interest of Child to award Father full custody. "We review custody determinations under an abuse of discretion standard, giving the district court broad discretion to make custody awards." *Nebeker v. Orton*, 2019 UT App 23, ¶ 15, 438 P.3d 1053 (cleaned up). And "we will not disturb the district court's judgment unless we determine the district court has

_____

2. "Upon motion of a party filed no later than 28 days after entry of judgment the court may amend its findings or make additional findings and may amend the judgment accordingly." Utah R. Civ. P. 52(b).

3. Mother did not identify the particular subsection of rule 59(a) on which she rested her motion but argued that the court denied her due process rights as a pro se litigant in various ways. Thus, it appears she argued for a new trial because of an "irregularity in the proceedings of the court . . . or opposing party, or any order of the court, or abuse of discretion by which a party was prevented from having a fair trial." *See* Utah R. Civ. P. 59(a)(1).

exceeded the scope of permitted discretion or has acted contrary to law." *Id.* (cleaned up).

¶27 Mother also alleges that she was denied the right to a fair trial when the district court denied her motion to continue the trial. "We review a trial court's decision on a motion to continue for an abuse of discretion." *Vaughan v. Romander*, 2015 UT App 244, ¶ 6, 360 P.3d 761. "Indeed, courts have substantial discretion in deciding whether to grant continuances, and their decisions will not be overturned unless that discretion has been clearly abused. Stated differently, a district court's denial of a motion to continue is an abuse of its discretion only if its decision is clearly unreasonable and arbitrary." *Clarke v. Clarke*, 2012 UT App 328, ¶ 19, 292 P.3d 76 (cleaned up).

## ANALYSIS

### I. Custody Determination

¶28 Mother first challenges the award of full custody to Father, arguing that the district court misapplied Utah common law in weighing the factors.[4] We disagree with Mother.

---

4. While the specific contours of her argument on appeal are difficult to follow, Mother also appears to assert that there was insufficient evidence to support the court's factual findings with regard to the statutory factors because she presented contrary evidence. "The factual findings of the district court will not be disturbed unless they are clearly erroneous by being in conflict with the clear weight of the evidence. But the existence of conflicting evidence is not sufficient to set aside a district court's finding." *Nebeker*, 2019 UT App 23, ¶ 16 (cleaned up). "The pill that is hard for many appellants to swallow is that if there is evidence supporting a finding, absent a legal problem—a fatal

(continued…)

¶29  In the context of determining custody, the court analyzes the child's best interest through the factors found in Utah Code section 30-3-10(2) in light of the evidence. "Generally, it is within the trial court's discretion to determine, based on the facts before it and within the confines set by the appellate courts, where a particular factor falls within the spectrum of relative importance and to accord each factor its appropriate weight." *Hudema v. Carpenter*, 1999 UT App 290, ¶ 26, 989 P.2d 491. The "court's discretion stems from the reality that in some cases the court must choose one custodian from two excellent parents, and its proximity to the evidence places it in a more advantaged position than an appellate court." *Tucker v. Tucker*, 910 P.2d 1209,

---

(…continued)

flaw—with that evidence, the finding will stand, even though there is ample record evidence that would have supported contrary findings." *Kimball v. Kimball*, 2009 UT App 233, ¶ 20 n.5, 217 P.3d 733 (cleaned up). The district court's "mission" is "to consider and weigh all the conflicting evidence and find the facts." *Id.* Thus, even though "contrary facts might have been found from all the evidence," we defer to the "court's pre-eminent role as fact-finder," and we "take the findings of fact as our starting point, unless particular findings have been shown . . . to lack legally adequate evidentiary support." *Id.* In this case, Mother brings no direct challenge to any specific finding. Indeed, in her brief, Mother argued that the "most egregious fatal flaws" were not in the court's findings of fact but in the court's "improperly weigh[ing]" the statutory factors. And Mother confirmed at oral argument that it was "correct" that she was not challenging the findings of fact made by the district court. Nevertheless, both in her briefs and at oral argument, Mother highlighted facts contrary to the district court's findings. So to be clear, without a direct challenge to any specific finding, we consider the district court's findings as established and view the contrary evidence as essentially immaterial.

1214 (Utah 1996). Thus, a custody determination "may frequently and of necessity require a choice between good and better." *Hogge v. Hogge*, 649 P.2d 51, 55 (Utah 1982).

¶30 While the district court is accorded discretion in weighing these factors, "it must be guided at all times by the best interests of the child," *see Tucker*, 910 P.2d at 1214, and it "must set forth written findings of fact and conclusions of law which specify the reasons for its custody decision," *see id.* at 1215. And "[w]henever custody is contested, the district court must provide the necessary supporting factual findings that link the evidence presented at trial to the child's best interest and the ability of each parent to meet the child's needs." *K.P.S. v. E.J.P.*, 2018 UT App 5, ¶ 27, 414 P.3d 933.

¶31 Here, the district court clearly operated within the above framework in reaching its custody decision. The court found the evidence supported the conclusion that Father was better able to meet the developmental needs of Child. *See* Utah Code Ann. § 30-3-10(2)(b) (LexisNexis 2019). Specifically, the court focused its attention on each parent's relative ability to co-parent Child. It determined that persuasive evidence was presented to show that Mother was "not interested in [Child] having an emotional father-son attachment to [Father], and to [the] contrary [had] taken steps to prevent or interfere with such an attachment." As evidence of this tendency, the court pointed to Mother's testimony and closing arguments:

> [Mother] went out of her way several times to tell the Court that [Child] did not like to be around [Father], and that [Child] would act up when it was time to transition to [Father]. It was clear from [Mother's] testimony that she believed it was an appropriate response to such perceptions to interfere with [Father's] access to [Child], including interfering with his parent time, and that she . . .

believed such interference was appropriate even in the face of court orders if her perception as [Child's] mother was that . . . she should keep him from [Father].

¶32 The court also noted that Mother regularly referred to Father by his first name when speaking about him to Child rather than referring to him as Child's father. The court concluded that "[i]t was evident" that Mother's testimony "was an effort to suggest that this four-year-old child had a preference for her over [Father]." In addition, the court noted that there was "ample evidence" that Mother had "interfered significantly" in Child's relationship with Father by "a pattern of misbehavior, violating the orders of the court, and not cooperating with the custody evaluation." In contrast, the court found "there was no evidence" that Father "would interfere" with Child's relationship with Mother.

¶33 The court observed that if Mother was truly "looking out for the emotional needs" of Child, she "would make efforts to ensure [Child had] a strong emotional bond and parent-child relationship with both parents." Based on this evidence, the court concluded,

> [T]here is a strong reason to believe [Child] can have an appropriate parent-child relationship with [Mother] if custody of [Child] is awarded to [Father]. But there is an equally strong reason to believe that [Mother] will prevent [Child] from having any such relationship with [Father] if custody is awarded to [Mother]. This is apparent from the pattern of intransigence and noncompliance with Court orders, particularly regarding parent time, that [Mother] has demonstrated during the pendency of this action. It is manifestly in [Child's] best interests to have an

emotional bond and supportive parent-child relationship with both parents, and that goal is more likely to be achieved if custody is awarded to [Father] than if custody is awarded to [Mother].

¶34 With regard to each parent's capacity and willingness to function as a parent, *see id.* § 30-3-10(2)(c), the court concluded that this factor overall weighed "very strongly" in favor of Father. As evidence, the court cited the "frustrating pattern throughout the pendency of this action of [Mother] agreeing to do things, or being ordered to do things, and then almost immediately refusing to follow through with agreements she made or Court orders she was given." This pattern led the court to not being "persuaded that [Mother] would cooperate with [Father] having a parent-child relationship with [Child]." Thus, the court concluded that it was in Child's best interest for Father to have sole custody because "he would cooperate better in terms of facilitating parent-time with [Mother] than she would in facilitating parent-time with him."

¶35 One overarching concern of the court in weighing the factors was that it was in the best interest of Child "to live in a situation that maximizes the probability that he will maintain a strong bond and a productive and healthy relationship with both parents." And "[b]ased on the evidence that was presented at trial," the court found that if Father was awarded sole legal and physical custody, he would "likely cooperate to the extent necessary to ensure" Mother would have a bond and relationship with Child. But the same could not be said if Mother was awarded sole custody. On the contrary, based on her pattern of behavior, the court found it "more likely than not" that she would not cooperate in fostering a parent-child relationship and bond between Father and Child.

¶36 The court in this case "had to choose between two good parents," but one of those parents—Mother—had consistently

manifested behavior that suggested she would not support or nurture Child's relationship with Father. *See Hudema v. Carpenter*, 1999 UT App 290, ¶ 38, 989 P.2d 491; *see also Tucker v. Tucker*, 910 P.2d 1209, 1215 (Utah 1996) ("Often, when there are two equally suitable parents, the trial judge may be compelled to base a custody award upon observations of the parents in court, the reactions of the child to each parent, or other factors. A trial court need not find one parent inadequate before awarding custody to the other."). So even though certain factors weighed slightly in Mother's favor, *see supra* ¶ 22, "we must defer to the trial court's broad discretion and affirm its conclusion that [Child's] interests would best be served by awarding [Father] primary physical custody," *see Hudema*, 1999 UT App 290, ¶ 38. In other words, the court did not abuse its discretion in concluding that it was in Child's best interest to live with the parent who would most likely ensure that he would have a strong bond and healthy relationship with both parents and that this goal would best be achieved by awarding Father sole legal and physical custody.

## II. Motion to Continue

¶37    Mother next argues that she was denied the right to a fair trial when the district court denied her motion to continue the trial.

¶38    "Courts have substantial discretion in deciding whether to grant continuances, and their decisions will not be overturned unless that discretion has been clearly abused." *Clarke v. Clarke*, 2012 UT App 328, ¶ 19, 292 P.3d 76 (cleaned up). Stated another way, "we will conclude that a trial court has abused that discretion only if the decision to grant or deny a continuance is clearly unreasonable and arbitrary." *Vaughan v. Romander*, 2015 UT App 244, ¶ 10, 360 P.3d 761 (cleaned up).

¶39    Mother has not shown that the district court abused its discretion in denying her motion to continue. In no way did the

court act unreasonably or arbitrarily in coming to its decision. In *Layton City v. Longcrier*, 943 P.2d 655 (Utah Ct. App. 1997), this court adopted a five-prong test to determine whether a district court acted reasonably in denying a motion to continue: (1) "whether other continuances have been requested and granted"; (2) "the balanced convenience or inconvenience to the litigants, witnesses, counsel, and the court"; (3) "whether the requested delay is for legitimate reasons, or whether it is dilatory, purposeful, or contrived"; (4) "whether the [requesting party] contributed to the circumstance which gives rise to the request for a continuance"; and (5) "whether denying the continuance will result in identifiable prejudice to [the requesting party's] case, and if so, whether this prejudice is of a material or substantial nature." *Id.* at 659. We address each factor in turn.

¶40   First, Mother had already received one continuance and one extended period of time following her revocation of consent to an informal trial. While the transitory time between the second scheduled informal trial in November and the March trial date did not result from an express continuance, as a functional matter, granting this motion would have effactually resulted in a third continuance; so the first factor supports a determination that the court acted reasonably in denying the motion.

¶41   Second, granting the motion, which was made on the morning of the trial, would have resulted in significant inconvenience. Father had taken time off work and traveled from New Mexico to be present at trial. Evaluator was also present, and Father had paid her for her time. Mother had also been notified of the trial date and was present in court. So apart from her lack of counsel, she faced no inconvenience in proceeding—other than her desire not to.

¶42   Third, Mother had displayed a pattern of dilatory behavior throughout the proceedings, and the court could have

reasonably concluded that her request for a continuance was yet another manifestation of this tendency.

¶43    Fourth, Mother's action of firing her fourth attorney constituted the very circumstance that gave rise to the putative reason (namely, to hire another attorney) for requesting the third continuance.

¶44    Fifth, and most importantly, Mother was not prejudiced by the denial of the motion. Indeed, the court noted that Mother

> was well prepared and represented herself quite effectively at trial, despite not ultimately convincing the court to rule in her favor. She had done research into relevant legal and factual issues. She represented herself tenaciously while still following the procedural rules set forth by the court. She cross-examined witnesses, testified, and presented arguments effectively. . . . Overall, the court's impression of [Mother's] performance at trial was that she had successfully deployed evidence and argument to present her strongest possible case to the court, albeit not a case that ultimately prevailed. In light of this, and considering that [Mother's] inability to present an expert witness at trial was due to decisions by [her] prior counsel not to designate an expert and not due to the court's refusal to grant a continuance, the court [was] hard-pressed to conclude that counsel could have secured a better result for [Mother] at trial than she secured for herself.

Thus, this final factor also supports the conclusion that the district court acted reasonably in denying the motion. *See State v. Wallace*, 2002 UT App 295, ¶ 37, 55 P.3d 1147 ("Unless a defendant shows that denial of the continuance had a material [e]ffect on the outcome of the trial, thereby demonstrating

prejudice, the trial court's decision would not constitute an abuse of discretion.").

¶45 Mother had already effectively received two continuances, and granting a third would have disproportionately inconvenienced Father. Moreover, Mother had a pattern of delaying the custody proceedings and had occasioned the need for a third continuance by her own actions. Finally, there is no evidence that Mother would have received a more favorable outcome had the continuance been granted. Under these circumstances, we conclude that the district court did not abuse its discretion in denying Mother's motion on the morning of the trial.

### III. Attorney Fees on Appeal

¶46  Father requests attorney fees incurred pursuant to this appeal. "Generally, when the trial court awards fees in a domestic action to the party who then substantially prevails on appeal, fees will also be awarded to that party on appeal." *Wollsieffer v. Wollsieffer*, 2019 UT App 99, ¶ 11, 446 P.3d 84 (cleaned up). But that is not the case here. The court awarded attorney fees below relative to the two orders to show cause, which are not the subject of this appeal. Because Father prevails on separate issues on appeal (namely, the award of custody and the denial of Mother's motion to continue), he is not entitled to fees incurred on appeal.

### CONCLUSION

¶47  We see no abuse of discretion in the district court's weighing of the statutory factors in reaching its decision to award custody to Father. We also conclude that the court did not abuse its discretion in denying Mother's motion to continue. And we decline to award Father attorney fees incurred on appeal. Affirmed.